## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN DOE,** | **Civil Action No. 23-22597 (GC) (TJB)** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM OPINION** |
| **HILLSBOROUGH TOWNSHIP BOARD OF EDUCATION, *et al.*** | |
| **Defendants.** | |

**BONGIOVANNI, United States Magistrate Judge**

Pending before the Court is Plaintiff's Motion for Leave to Proceed Pseudonymously ("Motion to Proceed Pseudonymously") (Docket Entry No. 14) and Plaintiff's Motion for Leave to File a Supplemental Certification in support of his Motion to Proceed Pseudonymously ("Motion for Leave to File a Supplemental Certification") (Docket Entry No. 23). Plaintiff's Motion to Proceed Pseudonymously is opposed by: Defendants Hillsborough Education Association, Henry Goodhue, and Amy Salinger (collectively, "Union Defendants"), Defendants Hillsborough Township Board of Education, Jean Trujillo, Gregory Gillette, Aiman Mahmoud, Lisa Antunes, Kim Feltre, and Mike Callahan (collectively, "HTBOE Defendants"), and Defendants, Hillsborough Township Police Department, Chief Michael McMahon, Captain David Fisher and Lt. Thomas McLain (collectively, "HTPD Defendants"). (Docket Entry Nos. 15-17.) Plaintiff's Motion to File a Supplemental Certification is opposed by the HTBOE Defendants. (Docket Entry No. 24.) The Court has fully reviewed and considered all arguments made in support of and opposing Plaintiff's motions. For the reasons set forth more fully below, Plaintiff's

Motion to File Supplemental Certification is **DENIED**, and Plaintiff's Motion to Proceed Pseudonymously is **DENIED**.

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are derived from Plaintiff's Complaint against the Hillsborough Township Board of Education, ("HTBOE"); HTBOE member and former HTBOE President, Jean Trujillo ("Trujillo"); HTBOE member and "township liaison," Gregory Gillette ("Gillette"); former HTBOE Secretary and Hillsborough Township School District ("HTSD") Business Administrator, Aiman Mahmoud ("Mahmoud"); former HTSD Superintendent, Lisa Antunes ("Antunes"); former HTSD Acting Superintendent, Kim Feltre ("Feltre"); former HTSD Vice President of Human Resources, Mike Callahan ("Callahan"); the labor union representing HTSD personnel, Hillsborough Education Association ("HEA"); HEA President, Henry Goodhue ("Goodhue"); HTSD teacher and former HEA Treasurer, Amy Salinger ("Salinger"); Hillsborough Township Police Department ("HTPD"); HTPD Captain, Dave Fisher ("Captain Fisher"); HTPD Lieutenant, Thomas McLain ("Lt. McLain"); and former HTPD Chief, Mike McMahon ("McMahon").   (Compl. ¶¶ 5-39; Docket Entry No. 1) ("Compl.").   The Court includes only background pertinent to the instant motion.

In April 2021, Plaintiff began sending email communications to members of the HTBOE and HEA expressing concern over the "clandestine implementation of a 'detracking' policy by senior Administration officials in the Hillsborough Township School District[.]" (*Id.* ¶ 56.) Plaintiff, a resident of Hillsborough Township, utilized a pseudonym—the Kirsten Diana Glampers Gmail Account (the "KDG Account")—in sending his communications in order to protect himself from retaliation from HTSD administrators; to protect his sources who provided him with the information concerning the unofficial detracking policy; and to insulate his wholly-uninvolved

spouse, who is a HTSD employee.  (*Id.* at pp. 1-2; ¶¶ 58-60.) As HTBOE members' emails were not listed on the Board website at the time, and because he feared interception of his messages by HTSD administration members who implemented the alleged detracking program, Plaintiff Googled individual board members' individual-yet-public email addresses and sent his communications to the addresses produced by those searches.  (*Id.* ¶ 62-64.)

From April through June 2021, Plaintiff sent numerous email communications to members of HTBOE and HEA, operating under the belief that the officials were open to anonymous, unfiltered feedback.  (*Id.* ¶¶ 68, 75.)  Plaintiff also believed that HEA officials would oppose detracking, because it was damaging to student education and to the school.  (*Id.* ¶ 74.) Plaintiff maintains that his emails were respectful and professional, containing attachments with academic publications discussing the merits of tracking and detracking.  (*Id.* ¶ 65-67.)  Many of the emails sent by Plaintiff were allegedly versions of previous email communications that he forwarded to the recipients.  (*Id.* ¶ 76.)  Plaintiff alleges that at no time did any recipient respond to his email communications nor request that Plaintiff direct his email communications to a different email address or use a different method of communication.  (*Id.* ¶ 77, 79.)

On June 16, 2021, after receiving no response to any of his previous emails, Plaintiff emailed the general email address of the HTBOE.  (*Id.* ¶ 81.)

On June 18, 2021, Plaintiff received a response from Defendant Mahmoud.  (*Id.* ¶ 83.)  In his response, Defendant Mahmoud informed Plaintiff that the HTBOE believed that Plaintiff was engaging in criminal harassment and that the HTBOE intended to file a criminal complaint against him. (*Id.* ¶ 85.)  The HTBOE also allegedly threatened to uncover Plaintiff's identity and instructed Plaintiff to cease and desist from further email communications.  (*Id.* ¶¶ 85-86.) Mahmoud copied Defendant HTPD Captain Fisher on this response.  (*Id.* ¶ 87.)  Plaintiff responded to Defendant

Mahmoud the same day, explaining why he did not believe his conduct rose to the level of criminal harassment. (*Id.* ¶ 93.) Plaintiff also agreed to desist from emailing the HEA, HTBOE, and their members. (*Id.*) Mahmoud responded to Plaintiff's email reasserting the HTBOE's intention to pursue a criminal complaint against Plaintiff. (*Id.* ¶ 95-96.)

On June 24, 2021, Plaintiff again wrote to Defendant Mahmoud, describing symptoms of anxiety he was experiencing at the prospect of a criminal investigation into his communications and his identity. (*Id.* ¶ 99.) This email went unanswered but was forwarded to the HTPD. (*Id.* ¶¶ 100-01.) Following this exchange, Plaintiff retained counsel Bruce S. Rosen ("Rosen"). (*Id.* ¶¶ 108-09.)

In the ensuing months, HTPD opened an investigation into Plaintiff's identity and conduct. (*Id.* ¶ 102.) HTPD, through subpoenas and non-disclosure orders to Google and various internet service providers, discovered the IP addresses associated with Plaintiff's KDG Account and eventually, the names and residential address of Plaintiff and his spouse. (*Id.* ¶ 118, 120-25.) On August 25, 2021, Defendant Lt. McLain contacted Rosen by telephone and advised that he had learned the identity of Plaintiff, who he mistakenly believed was Plaintiff's spouse. (*Id.* ¶ 127.) Rosen corrected Lt. McLain, providing the HTPD with Plaintiff's true identity. (*Id.* ¶ 128.)

On August 31, 2021, Lt. McLain conducted a telephone interview with Plaintiff and Rosen. (*Id.* ¶ 129.) During this interview, Lt. McLain Mirandized Plaintiff; Plaintiff explained his version of events, describing why he sent the emails and how he obtained the email addresses; Plaintiff confirmed he acted alone and that his spouse was wholly uninvolved with and unaware of the emails to HTBOE and HEA officials; Lt. McLain allegedly asked Plaintiff personal questions that were humiliating; and Plaintiff requested that his identity not be shared with other individuals associated with the HTPD, the HTBOE, the HTSD, the HEA, etc. (*Id.* ¶¶ 130-37.) Despite

Plaintiff's request, Lt. McLain allegedly identified Plaintiff to all Defendants. (*Id*. ¶ 138, 142.) Plaintiff's spouse was subsequently subjected to an investigation by and meeting with HTSD Administration officials—including Defendants Callahan, Antunes, Feltre and Mahmoud—concerning her potential involvement with the events. [1] (*Id*. ¶ 143.)

On September 27, 2021, Lt. McLain issued a Complaint with a Notice to Appear to Plaintiff, to answer for the charge that Plaintiff had engaged in harassment as defined by N.J.S.A. 2C:33-4(a), by "sending numerous emails to victims in a manner likely to cause annoyance." (*Id*. ¶ 147). On April 12, 2022, the Honorable Francesco Taddeo, J.M.C. dismissed the charge of harassment against Plaintiff. (*Id*. ¶ 151-52).

On November 22, 2023, Plaintiff initiated this action, filing suit against the aforementioned Defendants under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq. (*Id*. at pp. 23-27.); (*See supra* pp. 1-2.) Plaintiff claims that all named Defendants, including the individual Defendants in their individual capacities, have violated and deprived him of his rights to free speech, to free expression, and to petition the government, all of which are secured by the First Amendment of the United States Constitution. (Compl. ¶¶ 156-77.)

On December 21, 2023, the Union Defendants filed their First Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). (Docket Entry No. 5.) On January 11, 2024, the HTBOE Defendants filed their First Motion to Dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6). (Docket Entry No. 10.) On January 16, 2024, the HTPD Defendants filed their First Motion to Dismiss Plaintiff's Complaint pursuant

---

[1] In his Complaint, Plaintiff states that the HTSD Administration Defendants pursued and conducted the investigation into and meeting or "interrogation with Plaintiff's spouse. Plaintiff defines the HTSD Administration Defendants as collectively, Defendants Callahan, Antunes, Feltre, Mahmoud, and HTSD. (Compl. ¶ 27.)

to Rule 12(b)(6). (Docket Entry No. 11.) Each Motion to Dismiss is opposed by Plaintiff and currently pending before the District Court. (Docket Entry Nos. 18 and 19.)

On January 23, 2024, Plaintiff filed his current Motion for Leave to Proceed Pseudonymously. (Docket Entry No. 14.)  On January 30, 2024, the Union Defendants filed Opposition to Plaintiff's Motion to Proceed Pseudonymously.  (Docket Entry No. 15.)  On February 6, 2024, the HTBOE Defendants and HTPD Defendants filed their respective Oppositions to Plaintiff's Motion to Proceed Pseudonymously.  (Docket Entry Nos. 16 and 17.) On February 13, 2024, Plaintiff filed his Reply to all three Oppositions in a consolidated brief. (Docket Entry No. 22.)

On April 14, 2024, Plaintiff filed his Motion for Leave to File a Supplemental Certification. (Docket Entry No. 23.)  On May 6, 2024, the HTBOE Defendants filed Opposition to Plaintiff's Motion for Leave to File a Supplemental Certification.  (Docket Entry No. 24.)

## II.   PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL CERTIFICATION

### A.  Legal Standard

Local Civil Rule 7.1(d) provides that no further briefs, sur-replies or other papers, beyond a movant's reply brief, may be filed without leave of the Court.   L.Civ.R. 7.1(d)(6)-(7). "Ordinarily, parties are limited to filing briefs in accordance with a court's briefing schedule and may not file supplemental briefs beyond those contemplated by the schedule." *Aizen v. Am. Healthcare Admin. Servs., Inc.,* Civ. No. 18-15195, 2019 WL 4686811, at *3 (D.N.J. Sept. 26, 2019) (citing *English v. Fed. Nat'l Mortg. Ass'n*, 752 F. App'x 148, 150 (3d Cir. 2019). However, "the Court has broad discretion to consider supplemental briefing" in those rare occasions when permitting the briefing would be "appropriate and fair." *Fenza's Auto, Inc. v. Montagnaro's, Inc.*, Civ. No. 10-3336, 2011 WL 1098993, at *4 (D.N.J. Mar. 21, 2011). "Supplemental briefing may

be appropriate if the briefs concern new arguments and issues not addressed by the primary briefs." *Id.* (citing *Raube v. X-L Specialized Trailers, Inc.*, Civ. No. 06-4628, 2008 WL 11384153, at *5 n.6 (D.N.J. Apr. 10, 2008)).

### B. Discussion

As a preliminary matter, and as the HTBOE Defendants highlight, Plaintiff's Motion for Leave to file a Supplemental Certification is neither accompanied by a brief nor a statement explaining "why no brief is necessary and the reasons therefor." L.Civ.R. 7(d)(4); (HTBOE Defs.' Br. in Opp'n to Pl.'s Mot. for Leave to File a Suppl. Certification, at 2; Docket Entry No. 24) ("HTBOE Defs.' Opp'n Br. to Suppl. Cert.")  Plaintiff's motion is therefore deficient under the Local Civil Rules of this jurisdiction.

Notwithstanding this deficiency, Plaintiff's counsel, in his certification submitted in support of Plaintiff's Motion, fails to provide a proper basis warranting leave to file a supplemental certification to Plaintiff's Motion to Proceed Pseudonymously.  In his certification, Plaintiff's counsel states:

> Following the filing of Plaintiff's reply to the opposition of Plaintiff's motion for leave to proceed pseudonymously, I learned that Bruce Rosen, Esquire, Plaintiff's counsel in the criminal action, had attempted to obtain the consent of the Hillsborough Township Police Department to file its criminal complaint against Plaintiff using a pseudonym; however, this request was rejected.

(Certification of Shawn D. Edwards, Esq. in Supp. of Mot. for Leave to File a Suppl. Certification ¶ 2; Docket Entry No. 23-1) ("Edwards Certification in Supp. of Suppl. Cert.").  Outside of this statement, Plaintiff's counsel fails to explain: (1) why the Court should consider the Certification of Mr. Rosen after briefing on Plaintiff's motion has closed; (2) how this new fact is relevant to the analysis to be employed by the Court in deciding Plaintiff's motion; (3) the reason(s) for failing to include, incorporate, or discover this fact prior to the filing of Plaintiff's motion; and (4) how

permitting such supplemental briefing would be "appropriate and fair" under the circumstances. Indeed, as the HTBOE Defendants assert, the information contained in the Rosen Supplemental Certification was seemingly available to Plaintiff at the time Plaintiff filed his Motion to Proceed Pseudonymously.  (HTBOE Defs.' Opp'n Br. to Suppl. Cert., at 2.)  The Court agrees.  Absent a showing or explanation to the contrary, the Court is hard pressed to believe that Plaintiff, at the time of filing his present Motion to Proceed Pseudonymously, lacked knowledge of Mr. Rosen's—Plaintiff's counsel in the 2021 criminal action—efforts to maintain Plaintiff's anonymity in the 2021 criminal action.  Without more, the Court finds that Plaintiff has failed to satisfy his burden of proof to warrant leave to file a supplemental certification.

Even considering the Rosen Supplemental Certification, the Court finds that same "adds little to an already exhaustive discussion and presentation of the issues" contained in Plaintiff's original submissions, and that such a certification would have a *de minimis* effect on the Court's decision *infra*.  *See Fouad v. Milton Hershey Sch*., Civ. No. 19-253, 2020 WL 820146, at *1 (M.D. Pa. Feb. 19, 2020) (citing and discussing cases in which courts declined to grant a movant leave to file a supplemental brief).

For the foregoing reasons, Plaintiff's Motion for Leave to File a Supplemental Certification is **DENIED**.

## III.    PLAINTIFF'S MOTION FOR LEAVE TO PROCEED PSEUDONYMOUSLY

### A. Legal Standard

Federal Rule of Civil Procedure 10 requires plaintiffs to identify their real names in the Complaint.  "[A] plaintiff's use of a pseudonym 'runs afoul of the public's common law right of access to judicial proceedings.'" *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (quoting *Does I Thru XXIII v. Advanced Textile Corp*., 214 F.3d 1058, 1067 (9th Cir. 2000)).  However, courts

have allowed plaintiffs to proceed pseudonymously when the plaintiff can demonstrate (1) "a fear of severe harm" from the public disclosure of his name and (2) "that the fear of severe harm is reasonable." *Id*.  Crucially, a plaintiff's fear that he may "suffer embarrassment or economic harm" is insufficient to permit the use of a pseudonym. *Id.* (quoting *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 371 n.2 (3d Cir. 2008)).  Courts must then determine whether the "litigant's reasonable fear of severe harm outweighs the public's interest in open judicial proceedings." *Doe v. Oshrin*, 299 F.R.D. 100, 102 (D.N.J. 2014) (citing *Megless,* 654 F.3d at 408).

In making this determination, courts must balance the nine-factor test for the use of pseudonyms that was first articulated in *Doe v. Provident Life and Acc. Ins. Co*., 176 F.R.D. 464, 467 (E.D. Pa. 1997) (the "Provident Life" test) and adopted by the Third Circuit in *Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011).  The Third Circuit in *Megless* emphasized that the nine factors are non-exhaustive and directed courts to consider the facts and particular circumstances of each case in determining whether to grant a request to proceed under a pseudonym. *Megless,* 654 F.3d at 409-10.  The factors that weigh in favor of granting anonymity include:

> (1) the extent to which the identity of the litigant has been kept confidential;
> (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases;
> (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity;
> (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant[s'] identities;
> (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and
> (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Provident Life,* 176 F.R.D. at 467-68; *Megless*, 654 F.3d at 409. The factors that weigh against granting anonymity include:

> (1) the universal level of public interest in access to the identities of litigants;
> (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and
> (3) whether the opposition to pseudonym by counsel, the public, or the press is legitimately motivated.

*Provident Life,* 176 F.R.D. at 467-68; *Megless,* 654 F.3d at 409.   Since only exceptional circumstances will warrant the use of a pseudonym, courts must exercise their discretion in determining when these circumstances outweigh the strong public interest in open litigation. Exceptional circumstances justify the use of a pseudonym when a reasonable fear of severe harm outweighs the strong public interest in open litigation.   Examples of cases where courts have allowed parties to proceed under a pseudonym include those involving "'abortion, birth control, transsexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality'" as well as cases involving victims of sexual assault. *Megless*, 654 F.3d at 408 (quoting *Doe v. Borough of Morrisville*, 130 F.R.D. 612, 614 (E.D. Pa. 1990)); *Doe v. Princeton Univ.*, Civ. No. 19-7853, 2019 WL 5587327, at *2 (D.N.J. Oct. 30, 2019).

Ultimately, "[t]he decision to allow a plaintiff to proceed anonymously rests within the sound discretion of the court." *Doe v. Oshrin*, 299 F.R.D. 100, 103 (D.N.J. 2014) (citing *Doe v. Hartford Life & Accident Ins. Co.,* 237 F.R.D. 545, 548 (D.N.J. 2006)).

**B.  Discussion**

As a threshold matter, the Court must first determine if Plaintiff has articulated a reasonable fear of severe harm from the public disclosure of his name, thus entitling him to the *Megless* equitable factor balancing test.  *See Strike 3 Holdings, LLC v. Doe*, Civ. No. 22-1919, 2023 WL 3749969, at *3 (D.N.J. June 1, 2023) (denying Plaintiff's motion to maintain Defendant's pseudonym identifier because it failed to satisfy the threshold showing of a reasonable fear of

severe harm); *see also In re Allergan BIOCELL Textured Breast Implant Prod. Liab. Litig.*, Civ. No. 19-2921, 2020 WL 4745558, at *2 (D.N.J. Aug. 17, 2020) (finding that Plaintiffs did not articulate a fear of severe harm necessary to justify balancing under the *Megless* factors); *see also Doe v. L. Offs. of Robert A. Schuerger Co.*, Civ. No. 17-13105, 2018 WL 4258155, at *2 (D.N.J. Sept. 6, 2018) (finding that "[a]t the threshold . . . Plaintiff [did] not adequately alleg[e] a reasonable fear of severe harm); *see also Homesite Ins. Co. of the Midwest v. Ewideh*, Civ. No. 22-1664, 2023 WL 426923, at *3 (M.D. Pa. Jan. 26, 2023) (finding that defendants did not meet the threshold showing of reasonable fear of severe harm required to proceed anonymously); *see also Doe v. First Advantage Background Servs. Corp.*, Civ. No. 23-647, 2024 WL 1194771, at *1 (D. Del. Mar. 20, 2024) (finding that the Court needed not balance the *Megless* factors, because Plaintiff failed to make made the requisite showing of a reasonable fear of severe harm); *see also Megless,* 654 F.3d at 408 ("When a litigant sufficiently alleges that he or she has a reasonable fear of severe harm from litigating without a pseudonym, courts of appeals are in agreement that district courts should balance a plaintiff's interest and fear against the public's strong interest in an open litigation process").  This threshold examination essentially considers the second *Megless* factor, as same "asks the threshold question of what harm is feared and whether that fear is reasonable." *Doe v. Pennsylvania Dep't of Corr.*, Civ. No. 19-1584, 2019 WL 5683437, at *2 n.11 (M.D. Pa. Nov. 1, 2019); *see Megless,* 654 F.3d at 410 ("Addressing each factor in order . . . Second, what harm is the litigant seeking to avoid, and is the litigant's fear reasonable?").

For the reasons that follow, the Court finds that Plaintiff John Doe has failed to establish a reasonable fear of severe harm if his legal name is revealed and used in the present litigation.

Plaintiff articulates three bases upon which disclosure of his identity is feared: (1) disclosure will exacerbate his and his spouse's anxiety, depression, and mental health issues that

resulted from the criminal investigation and prosecution (Pl.'s Mov. Br., at 14-15; Docket Entry No. 14-1) ("Pl.'s Mov. Br."), (2) disclosure will make Plaintiff's spouse a target of harassment and will negatively impact her relationships, (*id.* at 16-18), and (3) disclosure will jeopardize Plaintiff's marriage (*id.* at 18-19).

As to his first basis, Plaintiff states, "[He], and his spouse, both already suffered severe anxiety and depression as a result of the investigation and criminal prosecution," which will be exacerbated if Plaintiff reveals his identity.[2]  (*Id.* at 15.)  Plaintiff further alleges that his spouse suffered from suicidal thoughts.  (*Id.*)  To establish his claims, Plaintiff cites to his own certification—which details his own and his spouse's alleged medical symptoms—and to a scientific paper published in the medical journal *Medicine, Science and the Law*.  (*Id.*)

The scientific paper focuses on the psychological impact of being wrongfully accused of a crime and the negative health implications that manifest from such wrongful accusations. (*Id.*) (citing Ex. A; Docket Entry No. 14-4.)  Plaintiff's reliance on same is lacking.  As to its applicability, the paper specifies that the participants of the study included: "Participants . . . wrongfully accused (not necessarily convicted or charged) of a crime involving a victim (e.g., crimes such as abuse, sexual assault, and murder." (Pl.'s Mov. Br., Ex. A, at 3; Docket Entry No. 14-4.)  In fact, the only crimes explicitly referenced throughout the scientific paper's study are the crimes of abuse, sexual assault, rape, murder, and armed robbery.  (*Id.*, Ex. A, at 2, 4.)  The paper cautions that the impact of accusations of other crimes may not be comparable.  (*Id.*, Ex. A, at 3.)

---

[2] The Court notes that the fact that the harm concerns Plaintiff's spouse does not defeat Plaintiff's alleged harm at the onset. Other sister courts have recognized that harms to innocent non-parties can serve as a viable basis weighing in favor of granting anonymity under certain circumstances. *See, e.g., Doe v. Cath. Relief Servs.*, Civ. No. 20-1815, 2020 WL 4582711, at *1 (D. Md. Aug. 10, 2020); *see also, e.g., Doe v. Roman Cath. Diocese of Greensburg,* Civ. No. 20-1750, 2021 WL 12137383, at *6 (D.D.C. Feb. 12, 2021).

As Plaintiff was not charged with the same or similar crimes that formed the basis of the paper's findings, having been previously charged with criminal harassment—a petty disorderly persons offense, Plaintiff falls outside the scientific paper's defined scope and applicability. *See* N.J.S.A. 2C:33-4(a). Even if Plaintiff was found to fall within the paper's defined scope, which the Court finds he does not, the paper still fails to establish or create a sufficient nexus to corroborate Plaintiff's allegations of anxiety and depression.  Barring this scientific paper, Plaintiff's relies on his own Certification submitted in support of his motion to corroborate his first basis.

In this regard, Defendants oppose Plaintiff's claims of anxiety and depression, contending that same are unsubstantiated, self-serving, and speculative. (Union Defs.' Opp'n Br., at 6; Docket Entry No. 15) ("Union Defs.' Opp'n Br."); (HTBOE Defs.' Opp'n Br., at 7-8; Docket Entry No. 16) ("HTBOE Defs.' Opp'n Br.").  In opposition, the HTBOE Defendants specifically rely on *Doe v. Weinstein*, 484 F. Supp. 3d 90, 94-95 (S.D.N.Y. 2020). (HTBOE Defs.' Opp'n Br., at 7.)   In *Weinstein,* the Court concluded that Plaintiff's assertion that the public reveal of her identity had the potential to spark additional trauma was ultimately unpersuasive to outweigh the embedded presumption of openness in judicial proceedings, where Plaintiff's claims of prospective trauma or mental harm were uncorroborated by medical professionals and amounted to general speculative allegations. *Weinstein*, 484 F. Supp. 3d at 94-95.

Indeed, courts in this jurisdiction have embodied this overarching ethos, having rejected claims of harm or generalized fear that are found to be speculative and unsupported by evidence. *See B.L. v. Fetherman*, 2023 WL 1818402, at *5 (discussing how vague references, vague possibilities, and general statements of physical harm are unpersuasive to establish a credible risk of harm); *see Doe v. College of New Jersey*, Civ. No. 19-20674, 2020 WL 360719, at *3 (D.N.J. Jan. 22, 2020), *aff'd*, Civ. No. 19-20674, 2020 WL 3604094 (D.N.J. July 2, 2020), *aff'd,* 997 F.3d

13

489 (3d Cir. 2021) (finding that Plaintiff's fears were speculative and not reasonable where Plaintiff failed to provide evidence establishing a credible risk of harm).

Yet, based on the circumstances, Plaintiff avers that his Certification and statements detailing his and his spouse's anxiety and depression are sufficient to establish said medical conditions, including the prospective mental and psychological harm that would actualize from the public identification of Plaintiff. To support his assertion, Plaintiff relies on *Doe v. Rutgers*, Civ. No. 18-12952, 2019 WL 1967021 (D.N.J. Apr. 30, 2019), specifically arguing that "courts have accepted plaintiffs' statements concerning the mental and psychological effects of disclosure in determining that the second *Megless* factor weighs in favor of anonymity." (Pl.'s Reply Br., at 5.) The Court finds that the current action's circumstances are distinguishable from the circumstances present in *Doe v. Rutgers.*

In *Doe v. Rutgers*, Plaintiff Jane Doe, a Rutgers Business School PhD student, alleged that she was sexually assaulted by and coerced into a sexual relationship with her dissertation advisor and that Rutgers failed to appropriately investigate and take corrective action against the advisor's alleged actions. *Doe v. Rutgers*, Civ. No. 18-12952, 2019 WL 1967021, at *1 (D.N.J. Apr. 30, 2019). In its analysis, the *Rutgers* Court described how courts have reached varying conclusions regarding the mental and emotional harm faced by alleged victims of sexual assault. *Id.* at 3. The *Rutgers* Court ultimately concluded that Plaintiff, under the circumstances of that action, had a particularized and well-founded concern that she will experience severe emotional and mental harm if her name was publicly revealed. *Id.*

Unlike the Plaintiff in *Rutgers*, neither Plaintiff nor his spouse here are a victim of sexual assault. Nor does the Court find that the circumstances in *Rutgers* that formed the basis of the *Rutgers* Court's conclusion are comparable to the circumstances of the present action. As such,

under the circumstances alleged by Plaintiff in this action, courts in this jurisdiction have not recognized generalized, unsubstantiated claims of current and prospective mental and psychological harm as a permissible basis to overcome the strong presumption of openness in judicial proceedings.

While the Court appreciates Plaintiff's and Plaintiff's spouse's alleged mental health conditions, outside of his own certification, Plaintiff has ultimately failed to provide any corroborating medical evidence, relevant scientific literature, and/or additional certifications/ affidavits—such as a certified statement from his spouse—in support of his claims.[3]   Without additional evidence, the Court finds that Plaintiff's fear that disclosure of his identity will exacerbate his and spouse's alleged anxiety, depression, and mental health issues is speculative and not reasonable.  Stated differently, Plaintiff's bald assertion that disclosure of his identity would exacerbate his and his spouse's alleged anxiety, depression and mental health issues, supported only by his own certification, is insufficient to establish a fear of reasonable severe harm to warrant anonymity. Even if Plaintiff were to provide additional evidence, Plaintiff has still failed to establish that his circumstance amounts to an exceptional circumstance as defined by courts in this jurisdiction that might outweigh the strong presumption of openness in judicial proceedings.

As to his second basis, Plaintiff alleges that disclosure of his identity will make himself and his spouse targets of harassment, with Plaintiff mainly focusing on the potential harm to his spouse.  (Pl.'s Mov. Br., at 16.)  In support, Plaintiff cites to various news articles detailing instances where teachers and other school personnel have been targets for harassment, threats, and job loss after expressing their personal views on hotly debated issues. (*Id.* at 16-17) (citing Exs.

---

[3] As discussed in greater detail *infra*, Plaintiff has chosen to voluntarily initiate and prosecute this civil action against Defendants without informing his spouse of same.

B-D; Docket Entry No. 14-4.)   Plaintiff maintains that the issue of detracking, which led to Plaintiff's emails to HTBOE and HEA officials, is very controversial, as the issue is "frequently framed as pitting the interests of high-achieving students against those of students from groups that have historically suffered discrimination."  (*Id.* at 17) (citing Exs. E and F; Docket Entry No. 14-4.)  It is Plaintiff's position that he has a reasonable fear that his spouse could be targeted, harassed, and/or impacted due to her association with Plaintiff and his views, including adversely affecting her relationships with school administrators, her colleagues, her students, and her students' parents.  (*Id.* at 17-18.)

As to his reliance on various news articles, Plaintiff explains that they serve as "evidence that educators have been targeted for taking controversial positions on racially-charged issues." (Pl.'s Reply Br., at 6.)   Plaintiff's reliance on the news articles is unpersuasive to establish a reasonable fear of severe harm that his spouse could be the target of harassment.   All of the articles submitted by Plaintiff focus on educators who have taken affirmative steps to either publicly advocate for, support, or express their beliefs inside or outside of the classroom.[4] (*See* note 4 and accompanying text *infra*) (discussing Pl.'s Mov. Br., Exs. B-D; Docket Entry No. 14-4.)  Plaintiff

---

[4] Hannah Natanson and Moriah Balingit, *Caught in the Culture Wars, Teachers Are Being Forced from Their Jobs*, WASH. POST (June 16, 2022) (describing incidents where teachers were fired for displaying a Black Lives Matter flag in the classroom, posting a video denouncing critical race theory, assigning worksheet about privilege, refusing to teach critical race theory, or posting on social media criticizing education policies and/or mask mandates ); Gabriella Borter, et al., *School Boards Get Death Threats Amid Rage over Race, Gender, Mask Policies*, REUTERS (Feb. 15, 2022),   https://www.reuters.com/investigates/special-report/usa-education-threats/   (describing incidents where school board members and their family members in various states experienced threatening and harassing messages due to the implementation of certain school policies, such as coronavirus protections, anti-racism efforts, and transgender bathroom policies); and Beck Andrew Salgado, *Followers of Right-Wing Forum Libs of TikTok Harass a Tosa First-Grade Educator for Teaching Pronouns at Past Job*, MILWAUKEE J. SENTINEL (July 20, 2022), https://www.jsonline.com/story/communities/west/news/2022/07/20/followers-right-wing forum-libs-tiktok-harass-new-tosa-teacher/10096346002/ (describing incident where a teacher was targeted and harassed by a TikTok account for teaching pronouns at a past teaching job).

does not allege that his spouse shares his views, nor does he claim that she advocates for or supports same inside or outside of the classroom.   More pointedly, Plaintiff does not allege that his spouse, as an educator or individual, has "taken," supported, advocated for, or expressed any position regarding his beliefs on the issue of detracking. Instead, Plaintiff claims that he acted independently on his own beliefs and that his spouse was wholly uninvolved with his email communications.  (Pl.'s Mov. Br., at 5.); (Doe's Certification ¶ 27; Docket Entry No. 14-3.) Plaintiff's spouse, while an educator, is therefore characteristically dissimilar to the subject individuals of Plaintiff's cited articles.   Nor do the articles cite to a single instance where an individual was targeted for their views on detracking.  The articles lend little support, if any, to establish that Plaintiff's fear of harm is reasonable and severe, amounting to more than mere speculation.

Regarding the crux of Plaintiff's alleged harm, Plaintiff argues that his spouse's association with him and his views on detracking policy is a reasonable and severe harm, despite her detachment from same, as such association could expose her as a target for harassment and other harms.  (*Id.* at 17.)  Plaintiff states that "[his] spouse was recently targeted by an anonymous [male] caller who knew her name and directed vulgar and abusive comments toward her." (Pl.'s Mov. Br., at 17-18.); (Doe Certification ¶ 64; Docket Entry No. 14-3) ("Doe Certification").   Most notably, however, Plaintiff does not allege that the anonymous call(s) were motivated by or in reference to Plaintiff's detracking emails, the criminal investigation and/or proceeding, or the meeting with HTSD Administrative officials. Nor does Plaintiff provide any specifics of the call that would shed light on the caller's motivation.  Indeed, Plaintiff concedes, "It is unknown why [Plaintiff's spouse] was targeted for harassment, but the incident demonstrates that teachers in Hillsborough Township School District are targeted for harassment."  (Pl.'s Reply Br., at 6.)  Such

reasoning is conclusory.  Absent more information, the Court cannot conclude that the anonymous caller targeted and harassed Plaintiff's spouse due to her occupation as an educator and, more specifically, her connection with Plaintiff and the events underlying this action.  Likewise, based on one anonymous caller with undisputedly unknown motivations, the Court cannot conclude that Plaintiff's fear of harm is severe and reasonable to justify the use of a pseudonym.  Therefore, the Court is not convinced that Plaintiff's speculative fear of his spouse becoming the target of harassment due to her mere association with Plaintiff amounts to a reasonable and credible risk of severe harm that might outweigh the strong interest in favor of open judicial proceedings, especially when Plaintiff has conspicuously and repeatedly made known throughout the course of this litigation that his spouse was and remains wholly uninvolved with his actions.

Next, Plaintiff claims that his spouse's relationships with colleagues and school administrators will be affected by the reveal of Plaintiff's identity, including the reveal of his views and criminal prosecution. This argument is also unpersuasive.  As Plaintiff's Complaint and fillings allege, "teachers and other HTSD staff members" are aware of the 2021 HTSD meeting with Plaintiff's spouse; a meeting which stemmed from the discovery of Plaintiff's identity and his email communications.[5] (Compl. ¶ 141-46); (Pl.'s Mov. Br., at 8-9); (Doe Certification ¶¶ 44, 47); (HTBOE Defs.' Opp'n Br., at 5 n.2.)  Plaintiff does not allege that any of his spouse's professional relationships were tarnished or deteriorated due to this disclosure, nor that Plaintiff was disciplined by school administrators afterwards. (Union Defs.' Opp'n Br., at 7 n.2.)  Nor does

---

[5] Plaintiff makes no effort to identify these "teachers and other HTSD staff members" nor to explain the extent of these individuals' knowledge of the events.  Absent more details, the Court is left to speculate to the scope, degree, and magnitude of the disclosure, including disclosure of Plaintiff's identity as well as of key events that form the basis of the present litigation—i.e., Plaintiff's emails concerning detracking, the HTPD investigation and prospective municipal criminal prosecution, etc.

Plaintiff allege that the school officials and administrators who are named Defendants in this action—who also know of Plaintiff's identity as well as the events underlying this action; who worked with Plaintiff's spouse during and after the within action's underlying events; and some of whom continue to serve as Plaintiff's spouse's colleagues—negatively altered their relationship with Plaintiff's spouse due to their knowledge of Plaintiff's views and emails.[6]  Plaintiff provides no substantiated basis as to why now Plaintiff's spouse's relationships would be severely harmed by the reveal of his identity.  Most importantly, Plaintiff provides no legal basis to bolster his fear, failing to cite to an instance where a court in this jurisdiction or in any other jurisdiction has found that his alleged fear amounts to a reasonable fear of severe harm that might outweigh the strong presumption in favor of open judicial proceedings.

Plaintiff also contends that Plaintiff's spouse's ability to teach and her relationships with her students, including their parents, will be ill-affected by the reveal of his identity. The Court finds that such an argument is speculative.  Again, outside of his reliance on his own assertions and factual allegations, Plaintiff provides no substantiation for these alleged harms.  Even if Plaintiff substantiated these harms, similar to his claims *supra*, Plaintiff has still failed establish that his fear of such harms constitutes a reasonable fear of severe harms that might outweigh the strong interest in favor of open judicial proceedings and justify the use of a pseudonym.

Accordingly, under the circumstances of this action, the Court finds that Plaintiff's second basis fails to constitute a fear of harm from the public disclosure of his name that is sufficiently severe, and more specifically, a fear of severe harm that is reasonable.

---

[6] *See* Compl. ¶¶ 19, 23, 27, 29-31 (incorporating the dates of employment for individual defendants).

19

As to his third basis, Plaintiff argues that anonymity is necessary to protect Plaintiff's marriage. (Pl.'s Mov. Br., at 18.)  In his Certification, Plaintiff explains that the events underlying this litigation nearly ended his marriage.  (*Id.*); (Doe Certification ¶ 50.)  As such, to shield his spouse from further embarrassment and harm, Plaintiff has not disclosed this lawsuit to his spouse. (*Id.*)   Yet, such a proposition has never been recognized as a sufficient basis to overcome the presumption in favor of open judicial proceedings.   In fact, *Megless* found that the fear of embarrassment is insufficient to permit the use of a pseudonym.  *Megless*, 654 F.3d at 408 (citation omitted).

Nor does Plaintiff provide a sufficient legal basis to support his contention that anonymity is necessary to preserve marital harmony.  Plaintiff relies on two cases to establish his assertion that "courts have recognized that the preservation of marital harmony is a substantial interest which may outweigh the disclosure of material information to the public."  (Pl.'s Mov. Br., at 18.)  The first case is *United States v. Ammar*, 714 F.2d 238, 258 (3d Cir. 1983), and the second case is *State v. Bailey,* 276 A.3d 124, 139 (2022). However, in those cases, the Third Circuit and Supreme Court of New Jersey respectively discussed the role and applicability of privileges, including the privilege of adverse spousal testimony and marital communications in a criminal or related proceedings.  The discussion on the utility and purpose of these evidentiary privileges has no relevance to the current analysis employed by the Court.  Nor is the Court convinced by Plaintiff's sweeping attempt to establish a nexus between the spirit of the evidentiary privileges and Plaintiff's current request to proceed anonymous.  The spousal privileges seek to preserve marital harmony and avert marital discord in very narrow circumstances, specifically in the adversarial

use of spousal testimony or of confidential marital communications as evidence at trial.[7] Even then, the privileges are not absolute.  Plaintiff here alleges that his marriage will deteriorate once his identity is revealed, because his spouse will be embarrassed and distraught by such a revelation, including the fact that Plaintiff initiated this action, causing her to suffer alleged prospective psychological harm.  Such a harm is not only speculative, supported only by Plaintiff's own certification, but also wholly dissimilar to the narrow circumstances and concerns that implicate the spousal evidentiary privileges.  Based on the foregoing, the Court finds that Plaintiff's fear fails to constitute a reasonable fear of severe harm that might outweigh the strong presumption of openness in judicial proceedings.

Furthermore, it is not lost on the Court that Plaintiff has voluntarily chosen to initiate and prosecute this civil action; has voluntarily detailed the effects that the within action's underlying events had on his spouse, a non-party; and has voluntarily refrained from discussing the filing and prosecution of this action with his spouse.[8]  The Court is hard pressed to believe that Plaintiff

---

[7] As the Third Circuit has explained, "The main rationale for the privilege [against adverse spousal testimony] today is that it protects the marriage from the discord that occurs when one spouse testifies against the other."  *Appeal of Malfitano*, 633 F.2d 276, 277 (3d Cir. 1980).  As to the marital communications privilege, "[Same] prevents a testifying spouse from disclosing confidential communications between the spouses. It 'reaches only those communications made in confidence and intended to be confidential.'"  *United States v. Ammar*, 714 F.2d 238, 258 (3d Cir. 1983) (citation omitted).

[8] As the HTBOE Defendants argue, it is unclear "[w]hy there is any need in this action for Plaintiff to disclose information about the emotional distress his spouse has allegedly endured as a result of the investigation and prosecution. Plaintiff's spouse is not a party, and he cannot recover for her emotional distress." (HTBOE Defs.' Opp'n Br., at 8 n.4.) The Court refrains from addressing the relevance, permissibility, and/or merit of Plaintiff's decision to incorporate such information into this action.  The Court does highlight, however, that by including this information into his Complaint and filings, all of which are accessible by defendants who know and can identify his spouse, Plaintiff has effected the very harm he seeks to avoid: "disclosure of his spouse's sensitive, personal, and intimate details[;]" disclosure which he alleges would further embarrass his spouse and exacerbate her alleged psychological and mental health issues. (Doe Certification ¶ 61); (Pl.'s Mov. Br., at 16, 18.)

failed to contemplate the possibility that his spouse would learn of this action or that his identity would be made public.  In fact, in some way, such a consideration is borne by every litigant that pursues an action and requests leave to proceed anonymously; that is, each litigant that initiates an action anonymously bears the potential that their identity might be made public and revealed to spouses, friends, family, and the like.  While the Court appreciates the difficult considerations that plaintiffs must balance in deciding to file and proceed with a lawsuit, such a calculus and the ultimate decisions that follow are plaintiffs alone to bear and not unique to Plaintiff here.  As noted, it is only exceptional circumstances that justify the use of a pseudonym.  Such is not the case here.

Accordingly, the Court finds that Plaintiff's third basis fails to constitute a fear of harm from the public disclosure of his name that is sufficiently severe, and more specifically, a fear of severe harm that is reasonable.

As Plaintiff has failed to articulate a fear of harm from the public disclosure of his name that is both severe and reasonable, the Court finds that Plaintiff's Motion for Leave to Proceed Pseudonymously must be denied.

Lastly, the Court addresses Plaintiff's statement that, "If [he] is ordered to divulge [his] identity in this lawsuit, [he] do[es] not believe that [he] will continue to pursue this lawsuit out of fear that it will again destroy [his] wholly-uninvolved spouse and [their] marriage."  (Doe Certification ¶ 65.)  Yet, "[A] plaintiff's stubborn refusal to litigate openly by itself cannot outweigh the public's interest in open trials." *Megless*, 654 F.3d at 410-11.

For the foregoing reasons, Plaintiff's Motion for Leave to Proceed Pseudonymously is **DENIED**.

**IV.     CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Leave to File a Supplemental

Certification and Motion for Leave to Proceed Pseudonymously are **DENIED.**  An appropriate

Order follows.

Dated:  August 30, 2024

<u>s/ Tonianne J. Bongiovanni</u>
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**