<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN DOE,<br><br>              Plaintiff,<br><br>    v.<br><br>HILLSBOROUGH TOWNSHIP BOARD OF EDUCATION, *et al.*,<br><br>              Defendants. | Civil Action No. 23-22597 (GC) (TJB)<br><br><u>**MEMORANDUM OPINION**</u> |

<u>**CASTNER, District Judge**</u>

      **THIS MATTER** comes before the Court upon three Motions to Dismiss pursuant to Federal Rules of Civil Procedure (Rules) 12(b)(1) and 12(b)(6): the first filed by Defendants Hillsborough Education Association (HEA), Henry Goodhue, and Amy Salinger (the HEA Defendants) (ECF No. 5); the second by Defendants Hillsborough Township Board of Education (the Board), Lisa Antunes, Mike Callahan, Kim Feltre, Gregory Gillette, Aiman Mahmoud, and Jean Trujillo (the Board Defendants) (ECF No. 10); and the third by Defendants Hillsborough Township Police Department (HTPD), Dave Fisher, Thomas M. McLain, and Mike McMahon (the Police Defendants)  (ECF No. 11).  Plaintiff opposed (ECF No. 19), and Defendants replied (ECF Nos. 20 & 21).  Plaintiff also filed an unopposed motion to substitute Defendant HTPD with Hillsborough Township.  (ECF No. 19.)  The Court carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, Defendants' Motions to Dismiss are **GRANTED** and Plaintiff's Motion to Substitute Defendants is **DENIED AS MOOT**.

I. **BACKGROUND**

    A. **Factual Background[1]**

Plaintiff is a resident of Hillsborough Township, New Jersey. (ECF No. 1 at 1.[2]) This matter arises from Plaintiff's allegation that his anonymous emails sent to members of the Board and HEA[3] expressing his concern over school policy led to a criminal charge of harassment in retaliation of his rights under the First Amendment to the United States Constitution. (*Id.* at 1-2.)

From April to June 2021, Plaintiff sent "numerous" emails to members of the Board and HEA voicing his objections to their "clandestine implementation of a 'detracking' policy" in the Hillsborough Township School District. (*Id.* at 2, ¶ 75.) According to Plaintiff, "tracking" is an "education policy" that schools use to group students based on their academic abilities. (*Id.* ¶¶ 40-42.) Conversely, a "detracking" policy "commingl[es] students with mixed academic achievement in the same classes, with the intention of exposing all students to the same curriculum, materials, and teaching." (*Id.* ¶ 45.) Plaintiff describes tracking as a matter of public concern debated by educators and policymakers for decades. (*Id.* ¶¶ 43, 50.)

Plaintiff alleges that in April 2021, he learned that school officials were "quietly implement[ing]" a detracking policy in the School District's curriculum despite the Board never officially adopting such a policy. (*Id.* ¶¶ 51-55.) Defendants Lisa Antunes (then-Superintendent of the District) and Kim Feltre (then-Assistant Superintendent for Curriculum and Instruction)

---

[1] On a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[2] Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[3] The HEA is the union that represents most personnel employed in the school district by the Board for the purpose of collective negotiations concerning the terms and conditions of employment. (ECF No. 1 ¶ 28.)

instituted the detracking policy and required staff members "to refer to detracking as a 'practice,' not as a policy . . . so that detracking could be implemented under the radar without requiring disclosure to, or approval from, the elected [Board members] or the public." (*Id.* ¶¶ 53-54.)

On April 28, 2021, after Plaintiff learned of Antunes's and Feltre's efforts, he began sending "numerous" emails to members of the Board and HEA, including Defendants Jean Trujillo (then-president of the Board), Gregory Gillette (then-Board Township Liaison), Henry Goodhue (then-president of the HEA), and Amy Salinger (then a teacher and the HEA treasurer). (*Id.* ¶¶ 11-15, 29-30, 56, 74-75.) Plaintiff intended to inform these officials of the "unauthorized, clandestine implementation of detracking in [Hillsborough Township] schools and further persuade them that detracking was not in the best interest of . . . students, the school district, and the town at large." (*Id.* ¶ 56.)

Plaintiff sent his emails using a pseudonym "to protect the sources" who provided him with information about the "unofficial detracking policy." (*Id.* ¶ 60.) Plaintiff also feared that "administrators would retaliate against his wholly-uninvolved spouse," a school district employee. (*Id.*) Plaintiff alleges that his emails were "professional" and "respectful," and often included "academic papers that presented a balanced examination of detracking." (*Id.* ¶¶ 65-67.) Many of Plaintiff's emails "were versions of previous email communications that he forwarded to the recipients." (*Id.* ¶ 76.) Plaintiff never received any responses to his emails. (*Id.* ¶ 77.)

On June 16, 2021, Plaintiff began sending emails to the Board's "general email address." (*Id.* ¶ 81.) On June 18, 2021, Defendant Aiman Mahmoud, then-secretary of the Board and the school district's business administrator, responded to Plaintiff's email. (*Id.* ¶¶ 24, 83.) Mahmoud accused Plaintiff "of engaging in criminal harassment," "threatened to uncover [Plaintiff's] real identity," "demanded that he cease and desist from sending further email communications," and

"advised [Plaintiff] that the [school district] . . . would file a criminal complaint against him." (*Id.* ¶¶ 83-86.) Mahmoud also copied to the email the Captain of the HTPD, Defendant Dave Fisher. (*Id.* ¶¶ 33, 87.) Plaintiff alleges that Mahmoud sent his email at the direction of the HEA and Board Defendants. (*Id.* ¶¶ 87-89.) Plaintiff responded via email that same day, explaining to Mahmoud that his emails "did not constitute criminal harassment" but promising "to cease his email communications anyway." (*Id.* ¶ 93.) Mahmoud responded that the school administration still intended to pursue criminal charges. (*Id.* ¶¶ 95-96.) After this exchange, "Plaintiff began suffering from severe anxiety," including "difficulty sleeping, panic attacks, lack of concentration, headaches, nausea, and feelings of dread." (*Id.* ¶ 98.) On June 24, 2021, Plaintiff sent another pseudonymous email to Mahmoud describing his anxiety and asking Defendants "to cease their efforts to unmask [Plaintiff] and prosecute him." (*Id.* ¶ 99.) Mahmoud did not respond but forwarded Plaintiff's email to Fisher. (*Id.* ¶¶ 100-101.)

On June 21, 2021, Fisher opened an investigation into Plaintiff "at the direction, encouragement, and/or insistence of" the HEA and Board Defendants. (*Id.* ¶¶ 102-103.) On July 12, 2021, a lawyer for Plaintiff sent a letter to Mahmoud and Fisher explaining that Plaintiff's emails were protected by the First Amendment, and that Mahmoud's "threats to prosecute Plaintiff [were] inappropriate and clearly meant to interfere with and undermine Plaintiff's right of free speech." (*Id.* ¶¶ 108-111.) But the investigation proceeded. Defendant Thomas McLain, a member of the HTPD, interviewed Callahan, Trujillo, Goodhue, Salinger, and Gillette in June and July 2021 and discovered Plaintiff's identity after issuing subpoenas related to Plaintiff's anonymous email account. (*Id.* ¶¶ 104-106, 115-126.) McLain also conducted a "telephone interrogation" with Plaintiff and his counsel. (*Id.* ¶¶ 127-139.) On September 27, 2021, Plaintiff was charged with criminal harassment. (*Id.* ¶ 147.) On April 12, 2022, without hearing from any

4

witnesses, the municipal court "determined that the State could not meet its burden of proof supporting the elements of harassment . . . and entered a verdict of 'not guilty.'" (*Id.* ¶ 152.)

### B. Procedural History

Plaintiff asserts six causes of action. Counts One and Three are claims of First Amendment retaliation under 42 U.S.C. § 1983 against the individual Defendants in their individual capacities. (*Id.* ¶¶ 154-158, 163-167.) Counts Two and Four are claims of First Amendment retaliation under § 1983 against the Board and HTPD for a "policy, practice, and/or custom" that violated Plaintiff's First Amendment rights. (*Id.* ¶¶ 159-162, 168-171.) Counts Five and Six are claims for violations of Plaintiff's rights to free expression and petition under the New Jersey Civil Rights Act (NJCRA), N.J. Stat. Ann. § 10:6-1, *et seq*. (*Id.* ¶¶ 172-177.)

In December 2023 and January 2024, the HEA, Board, and Police Defendants filed their Motions to Dismiss. (ECF Nos. 5, 10, 11.) On January 23, Plaintiff filed a Motion to Proceed Pseudonymously. (ECF No. 14.) On February 6, Plaintiff filed a single brief in opposition to Defendants' Motions to Dismiss. (ECF No. 19.[4]) The HEA and Board Defendants replied. (ECF Nos. 20 & 21.) On August 30, the Magistrate Judge denied Plaintiff's Motion to Proceed Pseudonymously. (ECF No. 26.)

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)—Lack of Subject Matter Jurisdiction

Under Rule 12(b)(1), a party may bring a motion to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). There are two types of subject-matter challenges under Rule 12(b)(1): "either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d

---

[4] Plaintiff also styled his opposition brief as a "cross-motion" to substitute the HTPD with Hillsborough Township as the appropriate Defendant. (ECF No. 19 at 29.) Defendants have not opposed.

Cir. 2016). The distinction is significant because it determines, among other things, whether the court accepts as true the non-moving party's facts as alleged in the pleadings. *See id.* ("In contrast to a facial challenge, a factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings.'" (quoting *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014))); *see also Aichele*, 757 F.3d at 358 (explaining differences between a facial and factual attack under Rule 12(b)(1)). On a facial attack, the court "accept[s] the complaint's well pled allegations as true, and review[s] 'the allegations of the complaint and documents referenced therein and attached thereto[] in the light most favorable to the plaintiff." *Manivannan v. United States Dep't of Energy*, 42 F.4th 163, 169 (3d Cir. 2022) (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). On a factual attack, "the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Davis*, 824 F.3d at 346 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *see also Mortensen*, 549 F.2d at 891 ("[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.").

      **B.**      **Rule 12(b)(6)—Failure to State a Claim**

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020).

## III.    DISCUSSION

### A.    Subject-Matter Jurisdiction

All Defendants argue at the outset that Plaintiff's failure "to seek leave to proceed under a pseudonym at the time the federal complaint [was] filed precludes the district court from exercising subject-matter jurisdiction." (ECF No. 5-1 at 12-13; ECF No. 10-1 at 11-13; ECF No. 11-1 at 7.) Defendants insist that "[u]ntil Plaintiff obtains approval to litigate using a pseudonym, the Court lacks jurisdiction." (ECF No. 21 at 7 (citing *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001).) The Court disagrees.

As Defendants point out, at least two United States Courts of Appeals have concluded that where a plaintiff files a complaint anonymously without the court's permission, "the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them." *W.N.J.*, 257 F.3d at 1172 (quoting *Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989)); *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636-37 (6th Cir. 2005) (affirming the dismissal of a complaint filed anonymously without the court's permission because

7

"the federal courts lack jurisdiction over the unnamed parties" (quoting *Gibbs*, 886 F.2d at 1245)).

Recently, however, the United States Court of Appeals for the Fourth Circuit persuasively explained that "a plaintiff's failure to disclose her name to the court at the time she files a complaint is immaterial to whether that civil action qualifies as a case or controversy" within the meaning of Article III of the United States Constitution. *B.R. v. F.C.S.B.*, 17 F.4th 485, 493-95 (4th Cir. 2021). The Fourth Circuit reasoned that the term "jurisdiction" refers to "the courts' statutory or constitutional *power* to adjudicate the case," and although the plaintiff "did not include her real name in the complaint as required by [Rule] 10(a)," she alleged "the elements of a Title IX claim, over which federal courts have jurisdiction," and there was "nothing in her complaint to suggest that what she alleged was fictitious." *Id.* at 492-93. Accordingly, the dispute "was a real case, a real controversy, that federal courts have jurisdiction to resolve." *Id.* at 493. The Fourth Circuit emphasized that it did not "intend to trivialize the importance of complying with Rule 10(a)"—which "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Id.* at 496 (quoting *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008)). But it clarified that a plaintiff's failure to disclose her name at the outset of litigation does not deny the court the power to resolve the dispute. *Id.* (distinguishing *Gibbs*, 886 F.2d at 1245, as the sort of "drive-by jurisdictional ruling[]" that was more common before the United States Supreme Court clarified the meaning of subject-matter jurisdiction in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89, 91 (1998)).

Moreover, it appears that the United States Court of Appeals for the Third Circuit has not treated a plaintiff's anonymity as a jurisdictional issue. For example, in *Doe v. College of New Jersey*, the plaintiff filed a motion to proceed anonymously six days after filing a complaint asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Civ.

8

No. 19-20674, 2020 WL 3604094, at *1 (D.N.J. Jul. 2, 2020), *aff'd*, 997 F.3d 489 (3d Cir. 2021). (*See* Civ. No. 19-20674, ECF Nos. 1, 3.) In January 2020, the Magistrate Judge denied the plaintiff's motion to proceed anonymously, and the case proceeded through July 2020 when the district court affirmed the Magistrate Judge's decision. *Doe*, 2020 WL 3604094, at *1. The plaintiff appealed the district court's decision to the Third Circuit. (Civ. No. 19-20674, ECF No. 53.) The court stayed its orders requiring the plaintiff to disclose her identity during the pendency of her appeals. (Civ. No. 19-20674, ECF Nos. 17, 51.) Discovery proceeded even though the plaintiff's identity remained anonymous to the public. In June 2021, the Third Circuit affirmed the district court's denial of plaintiff's request to proceed anonymously, after which the court directed the plaintiff to amend the caption of the case to reflect her identity. *Doe*, 997 F.3d at 491. (*See* Civ. No. 19-20674, ECF No. 80.) Critically, the Third Circuit noted that the district court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1367. *Doe*, 997 F.3d at 493 n.3.

Here, too, Plaintiff's failure to disclose his name to the Court at the time he filed his complaint "is immaterial to whether [this] civil action qualifies as a case or controversy." *B.R.*, 17 F.4th at 495. Despite Defendants' argument that they cannot "confirm whether [Plaintiff] is the individual he purports to be," Plaintiff has alleged several claims under federal law, and nothing in the Complaint or Defendants' arguments suggests that this matter is not a real case or controversy that this Court has the power to resolve. *See B.R.*, 17 F.4th at 492-93. (ECF No. 10-1 at 12.) And although the Magistrate Judge has ruled that Plaintiff may not proceed pseudonymously, this decision does not affect the Court's adjudicatory power over this case. Accordingly, the Court has subject-matter jurisdiction over Plaintiff's § 1983 claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state-law claims under § 1367(a).

### B.     Claims under § 1983 (Counts One and Three) and the NJCRA (Counts Five and Six)

#### 1.     *Statute of Limitations*

Counts One and Three involve First Amendment retaliation claims under § 1983 against the individual HEA, Board, and Police Defendants. Counts Five and Six are based on the same conduct and assert parallel claims under the NJCRA.[5] The HEA and Board Defendants argue that Plaintiff's claims under § 1983 and the NJCRA are time-barred by a two-year statute of limitations. (ECF No. 5-1 at 13-15; ECF No. 10-1 at 13-16.)

The defendant bears the burden of establishing that a statute of limitations affirmative defense applies to a particular claim, and claims may be dismissed as untimely on a Rule 12(b)(6) motion only if the time bar is apparent on the face of the complaint. *Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 349 (D.N.J. 2015) (citations omitted). "The length of the statute of limitations for a § 1983 . . . claim is governed by the personal injury tort law of the state where the cause of action arose." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). In New Jersey, "[t]here is a two-year statute of limitations for claims brought under § 1983." S*ears v. Dellavelle*, Civ. No. 21-18739, 2022 WL 951367, at *3 (D.N.J. Mar. 30, 2022) (citing *O'Connor v. City of Newark*, 440 F.3d 125, 126-27 (3d Cir. 2006)). "New Jersey's two-year statute of limitations for personal-injury claims also applies to claims under the NJCRA." *Lewis v. New Jersey Dept. of Child. and Fams.*, Civ. No. 22-2782, 2023 WL 4700642, at *3 (3d Cir. Jul. 24, 2023) (citing *Lapolla v. Cnty. of Union*, 157 A.3d 458, 464 (N.J. Super. Ct. App. Div. 2017) and N.J. Stat. Ann. § 2A:14-2(a)).

---

[5]     "The NJCRA was modeled on Section 1983, and New Jersey courts have consistently looked at claims under the NJCRA through the lens of § 1983. The two are construed in parallel." *Southward v. Elizabeth Bd. of Educ.*, Civ. No. 15-3699, 2017 WL 111924, at *11 n.8 (D.N.J. Jan. 11, 2017) (citations and internal quotations omitted).

The accrual of § 1983 claims is governed by federal law and runs "when a 'reasonable person should have known' that they had suffered an injury." *Lewis*, 2023 WL 4700642, at *3 (quoting *Kach*, 589 F.3d at 634). "New Jersey follows a similar rule for the statute of limitations applicable to NJCRA claims." *Id.* (citing *Caravaggio v. D'Agostini*, 765 A.2d 182, 187 (N.J. 2001) (finding that the limitations period of N.J. Stat. Ann. § 2A:14-2 begins to run when, based on a reasonable person test, plaintiff knew or should have known of sufficient facts to start the statute of limitations running)). Here, because First Amendment retaliation claims under § 1983 and the NJCRA are "construed in parallel" and follow the same statute of limitations analyses, the Court will consider the timeliness of Counts One, Three, Five, and Six together. *See, e.g.*, *Southward*, 2017 WL 111924, at *11-12 (determining that both § 1983 and NJCRA claims for First Amendment retaliation were untimely under the same analysis).

A claim for First Amendment retaliatory prosecution requires the plaintiff to allege that (1) he engaged in protected activity, (2) the government responded with retaliation, (3) the protected activity was the cause of the retaliation, and (4) the underlying criminal charges were unsupported by probable cause. *Pomykacz v. Borough of West Wildwood*, 438 F. Supp. 2d 504, 512, 512 n.13 (D.N.J. 2006) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003)); *Ference v. Township of Hamilton*, 538 F. Supp. 2d 785, 797 (D.N.J. 2008). The statute of limitations for First Amendment retaliation claims "begins to run when each alleged retaliatory act occurs" even if it is "relatively minor." *O'Connor*, 440 F.3d at 127-28. For this reason, the "continuing violation doctrine" does not apply to First Amendment retaliation claims even where a Plaintiff alleges an "overarching conspiracy."[6] And unlike claims for malicious prosecution, which accrue when "the

---

[6] *Evans*, 124 F. Supp. 3d at 350-51; *see also Myers v. Cnty. of Somerset*, 515 F. Supp. 2d 4982, 501 (D.N.J. 2007) ("Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."); *Southward*, 2017 WL 111924, at

underlying proceeding terminates in the plaintiff's favor,"[7] a claim for First Amendment retaliation does not require a favorable disposition of the underlying criminal charges. *See Pomykacz*, 438 F. Supp. 2d at 512, 512 n.13; *Estate of Smith*, 318 F.3d at 512.

Here, Plaintiff alleges few retaliatory acts on the part of the individual HEA and Board Defendants. Plaintiff ascribes no specific retaliatory conduct on the part of Antunes and Feltre other than allegedly "approv[ing]" of the threats of prosecution made against Plaintiff, which occurred before Plaintiff was charged with harassment. (*See* ECF No. 1 ¶¶ 84, 161.) As for the remaining HEA and Board Defendants, the only specific allegations of retaliatory conduct are Mahmoud's emails to Plaintiff between June 18 and June 24, 2021, and Callahan, Goodhue, Salinger, Trujillo, and Gillette's interviews with law enforcement that occurred in June and July of 2021. (*Id.* ¶¶ 83-101, 104, 115, 147.) Similarly, the Police Defendants' alleged retaliatory conduct occurred between June 21, 2021—when the investigation into Plaintiff was opened—and September 27, 2021, when McLain, "at the direction of Chief McMahaon and Captain Fisher," initiated a charge of criminal harassment against Plaintiff. (ECF No. 1 ¶¶ 102, 147.) All of the alleged retaliatory conduct occurred on or before September 27, 2021, which is more than two years before Plaintiff filed his Complaint on November 22, 2023. Plaintiff alleges no conduct on the part of these Defendants beyond September 27, 2021—only undated, conclusory allegations that they "conspired to deprive and have deprived Plaintiff" of his First Amendment rights "by retaliating against Plaintiff through threatening and prosecuting Plaintiff without probable cause." (*Id.* ¶¶ 156, 165.) But the statute of limitations for a First Amendment retaliation claim "begins to

---

*12 (noting that both federal and state First Amendment retaliation claims accrue based on "discrete" acts as opposed to a "continuing violation analysis").

[7]     *Cresci v. Gyess*, Civ. No. 17-2342, 2018 WL 4961466, at *11 n.18 (D.N.J. Oct. 15, 2018) (citing *Heck v. Humphrey*, 512 U.S. 477, 489 (1994)).

run when each alleged retaliatory act occurs," and Plaintiff therefore cannot allege an "overarching conspiracy" to "salvage otherwise untimely acts of discrimination or instances of alleged wrongdoing that Plaintiff knew or should have known were actionable." *Evans*, 124 F. Supp. 3d at 351.

Plaintiff's next argument that the statute of limitations here did not begin to run until April 12, 2022—the date the charges against him were dismissed—is unavailing because a favorable termination of the underlying criminal proceedings is not required to prove First Amendment retaliation. At the time he was charged, Plaintiff was already aware that the charges were allegedly "meant to interfere with Plaintiff's right of free speech" as evidenced by his counsel's July 12, 2021 letter to Mahmoud. (*Id.* ¶¶ 108-113.) Therefore, based on the allegations in the Complaint, Plaintiff was aware of his alleged injury on September 27, 2021, when he was criminally charged for harassment in alleged retaliation for exercising his First Amendment rights.[8]

---

[8] The only authority provided by Plaintiff in support of his argument that a First Amendment retaliatory prosecution claim does not accrue until a favorable termination is *Yazid-Mazin v. McCormick*, Civ. No. 13-5783, 2013 WL 5758716, at *1 (D.N.J. Oct. 24, 2013). There, the district court liberally construed a pro se plaintiff's complaint to assert claims for both malicious and retaliatory prosecution under the First and Fourth Amendments. The court stated in a footnote that "Section 1983 claims for malicious and retaliatory prosecution will not accrue unless and until the criminal prosecution terminates in Plaintiff's favor." *Id.* at *5 (citing *Heck*, 512 U.S. at 486-87). But the claims in *Yazid-Mazin* were dismissed for failure to state a claim, and the court did not conduct a statute-of-limitations analysis. And in *Reardon v. Zonies*, 730 F. App'x 129, 132 (3d Cir. 2018), the Third Circuit has more recently suggested that retaliatory-prosecution claims do not require a favorable termination by stating that "retaliatory-prosecution claims may not be barred by *Heck*," citing *Smith v. Campbell*, 782 F.3d 93, 101-02 (2d Cir. 2015). In *Smith*, the Second Circuit held that the statute of limitations for First Amendment retaliatory prosecution claims began to run on the date the plaintiff was criminally charged, and not on the date her charges were favorably terminated. *Id.* at 100-02 (noting that plaintiff's argument "mistakenly conflates the Fourth Amendment tort of malicious prosecution with the First Amendment tort of retaliation"); *see also Towne v. Donnelly*, 44 F.4th 666, 671 (7th Cir. 2022) (noting that First Amendment retaliatory prosecution claims "typically accrue[] when the retaliatory charges are brought" (citing *Reardon*, 730 F. App'x at 132) (additional citations omitted)). Thus, this Court declines to rely on the dicta in *Yazid-Mazin* against the contrary weight of authority from the Courts of Appeals

Plaintiff next contends that a number of Defendants "were scheduled to testify as witnesses" and "continued to participate in the prosecution, providing additional information to the prosecutor and preparing to testify at trial, until the case was dismissed [on] April 12, 2022." (ECF No. 18 at 23, 26.) But the Court cannot consider these allegations because they are not stated in the Complaint. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). In fact, the Complaint appears to contradict these allegations by stating that the municipal court dismissed Plaintiff's charges "[w]ithout hearing from any witnesses." (ECF No. 1 ¶ 152.) Nor can the Court rely on Plaintiff's additional argument in his opposition brief that he was not aware of each Defendant's "direct involvement until discovery was produced following the filing of the criminal complaint," because these facts are not alleged in his Complaint. (ECF No. 18 at 26.) *See Evans*, 124 F. Supp. 3d at 352 n.13 (citation omitted) (rejecting the plaintiff's argument that the statute of limitations for her retaliatory arrest claim did not begin to run "until criminal discovery was produced to her attorney" in her underlying criminal proceeding because these facts were absent from the complaint).

Finally, to the extent that Plaintiff is asking the Court to construe Plaintiff's conduct as a "continuing violation" that lasted until the charges were dismissed on April 12, 2022, the "continuing violations" doctrine has repeatedly been rejected in the First Amendment retaliation context. *See, e.g.*, *O'Connor*, 440 F.3d at 128-29; *Evans*, 124 F. Supp. 3d at 349-51 ("[V]irtually all of the precedent discussing the continuing violation doctrine involves workplace discrimination suits." (citing *Major Tours, Inc. v. Colorel*, 799 F. Supp. 2d 376, 387 (D.N.J. 2011)). Accordingly, it is apparent from the face of the Complaint that Counts One, Three, Five, and Six are time-barred,

---

demonstrating that a First Amendment retaliatory prosecution claim may accrue before favorable termination of the underlying charges.

and the Court will dismiss them without prejudice. *See Evans*, 124 F. Supp. 3d at 359-60 (dismissing Plaintiff's time-barred First Amendment retaliation claims under § 1983 without prejudice because "the Court cannot conclude that amendment would be futile").

### 2. *Failure to State a Claim*

If the Court construes Counts One, Three, Five, and Six as claims for malicious prosecution, they would not be time-barred.[9] As discussed, malicious prosecution claims do not accrue until the underlying criminal proceedings result in a favorable termination, and Plaintiff's criminal charges were dismissed within two years of the filing of his Complaint. *See Cresci*, 2018 WL 4961466, at *11 n.18 (citing *Heck*, 512 U.S. at 489).

Nevertheless, Plaintiff's claims would still be dismissed for failure to state a claim even if construed as claims for malicious prosecution. To state a claim for malicious prosecution under § 1983, a plaintiff must allege that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Estate of Smith*, 318 F.3d at 521 (citation omitted). As

---

[9] The Complaint does not contain the phrase "malicious prosecution" or reference the Fourth Amendment, on which malicious prosecution claims are typically based. *See Donahue v. Gavin*, 280 F.3d 371, 379-81 (3d Cir. 2002); *Smith*, 782 F.3d at 100 (comparing the "Fourth Amendment tort of malicious prosecution with the First Amendment tort of retaliation"). And Plaintiff appears to clarify in his opposition brief that he is asserting claims for First Amendment retaliation as opposed to malicious prosecution. (*See* ECF No. 18 at 23.) The Third Circuit, however, has suggested that a malicious prosecution claim under § 1983 "could be based on a constitutional provision other than the Fourth Amendment." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000) (citing *Torres v. McLaughlin*, 163 F.3d 169 (3d Cir. 1998)). *See also Evans*, 124 F. Supp. 3d at 352 (finding that the plaintiff's First Amendment retaliation claims were time-barred, but that a claim for malicious prosecution under the First and Fourteenth Amendments was not clearly time-barred due to the favorable termination rule).

the Board Defendants correctly argue, Plaintiff has not pled any facts to support the fifth element. (*See* ECF No. 10-1 at 18.)  Plaintiff's charges for criminal harassment and appearance in municipal court are not the "onerous types of pretrial, non-custodial restrictions" sufficient to plead a claim of malicious prosecution.  *See Brantley v. Wysocki*, 662 F. App'x 138, 141 (3d Cir. 2016) (quoting *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005)) (noting that a deprivation of liberty could exist where "a plaintiff was incarcerated, was detained in the police station, posted bond, was required to contact pretrial services, was prohibited from travelling or was required to travel to attend court," and finding that receiving a summons by mail and attending a two-day suppression hearing did not amount to a deprivation of liberty).  Thus, to the extent that Plaintiff's claims are grounded in a theory of malicious prosecution, they must be dismissed for failure to state a claim even if it is not apparent from the face of the Complaint that they are time-barred. Again, Plaintiff's claims are dismissed without prejudice in the event he can correct the deficiencies identified herein.

      **C.**     ***Monell* Claims (Counts Two and Four)**

In Count Two, Plaintiff accuses the Board of establishing "a policy, practice, and/or custom" of threatening and pursuing prosecution of citizens "who contact the publicly-elected Board of Education or its members to notify them of the illicit conduct of [school] officials, and/or oppose certain district policies established by [school] officials."  (ECF No. 1 ¶¶ 160-161.)  Plaintiff alleges that the Board's "conduct in threatening and prosecuting Plaintiff for exercising his First Amendment rights was approved by Antunes, Feltre, and members of the [Board]," and that the board members "delegated their authority to . . . Mahmoud and Callahan to threaten and pursue prosecution of the Plaintiff."  (*Id.* ¶ 161.)

"It is well established that local government units cannot be held liable via *respondeat superior* for the constitutional violations of their employees 'unless action pursuant to official municipal policy of some nature caused a constitutional tort' to be committed by such employees." *Edwards v. Lindenwold Police Dep't*, Civ No. 21-13076, 2022 WL 621064, at *6 (D.N.J. Mar. 3, 2022) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978)). To adequately plead a claim under *Monell*, the plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 659 (3d Cir. 2009). A policy consists of "an official proclamation, policy, or edict" issued by a "decisionmaker possess[ing] final authority to establish municipal policy." *Edwards*, 2022 WL 621064, at *6 (*quoting Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). On the other hand, a custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

Here, Plaintiff has not cited any official proclamation, policy, or edict. Nor has he pled facts demonstrating that any of the alleged conduct rises to the level of a custom that "is so well-settled and permanent as virtually to constitute law." *Bielvicz*, 915 F.2d at 850. Plaintiff's allegations that certain Board and Police Defendants "delegated their authority" to retaliate against Plaintiff's speech echo the argument in *Losch v. Borough of Parkesburg, Pennsylvania* that a police chief's "actions represented official policy," which the Third Circuit found insufficient to state a *Monell* claim. 736 F.2d 903, 910-11 (3d Cir. 1984).

Plaintiff argues that he has sufficiently pled a policy or practice because none of his emails were directed at Mahmoud, so Mahmoud "must have been informed of Plaintiff's communications and directed by [Board] and HEA officials to send the demand letter to Plaintiff and contact HTPD

17

to pursue the investigation and prosecution of Plaintiff." (ECF No. 18 at 23.) But Plaintiff's argument falls far short of identifying a specific proclamation, policy, or edict, or a "well-settled and permanent" custom. *Bielvicz*, 915 F.2d at 805. And a "policy cannot ordinarily be inferred from a single instance of illegality." *Losch*, 736 F.3d at 911. Plaintiff's claims amount to a conclusory recitation of the elements, which "is insufficient to provide a basis for municipal liability." *Edwards*, 2022 WL 621064, at *7. Thus, Count Two is dismissed without prejudice.

Count Four is a similar *Monell* claim against the HTPD. The HTPD argues that it is "not a proper party to this action" because as a municipal police department, it is not an entity that is separate from the municipality. (ECF No. 11-1 at 10 (citing N.J. Stat. Ann. § 40A:14-118 (describing a police force as "an executive and enforcement function of municipal government"); *Hilliard v. New Jersey Army Nat'l Guard*, 527 F. Supp. 405, 409 (dismissing § 1983 claims against "the noncorporate, Township of Teaneck Police Department" because it is "not a separate entity subject to suit")).) Because Plaintiff concedes that the HTPD is not "the correct party in interest," Count Four is dismissed without prejudice.[10] (ECF No. 19-1 at 29.) As the Court has dismissed Plaintiff's remaining claims without prejudice, Plaintiff's motion to substitute the HTPD with Hillsborough Township is denied as moot. Plaintiff may amend his pleadings to name the appropriate party should Plaintiff choose to file an Amended Complaint. *See* Rule 15(a) ("The court should freely give leave [for parties to amend their pleadings] when justice so requires.").

---

[10] Although the Court need not evaluate Count Four against the HTPD, for the sake of judicial economy, the Court notes that Count Four fails to state a *Monell* claim for the same reasons as Count Two even if it had been asserted against the proper defendant.

In addition, because Plaintiff's claims have been dismissed as time-barred or for not meeting the pleading standards of Rule 12(b)(6), the Court need not address Defendants' qualified immunity arguments at this stage. *See, e.g.*, *Lopez v. Eaton*, Civ. No. 21-13076, 2017 WL 6539236, at *3 (D.N.J. Dec. 21, 2017) (declining to determine qualified immunity after dismissing § 1983 claim); *Manion v. Sarcione*, 192 F. Supp. 2d 353, 357 (E.D. Pa. 2001) (same).

IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motions to Dismiss are **GRANTED**. Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**. Plaintiff's motion to substitute Defendant HTPD is **GRANTED**. Plaintiff may file an Amended Complaint within thirty (30) days to the extent Plaintiff can cure the deficiencies identified herein. An appropriate Order follows.

Dated: August 30, 2024

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE