**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN HURLEY,<br><br>Plaintiffs,<br><br>v.<br><br>HILLSBOROUGH TOWNSHIP BOARD OF EDUCATION, *et al.*,<br><br>Defendants. | Civil Action No. 23-22597 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Henry Goodhue, Amy Salinger, and the Hillsborough Education Association's (collectively, the "HEA Defendants") Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 30), Defendants Hillsborough Township Board of Education, Jean Trujillo, Gregory Gilette, Aiman Mahmoud, Lisa Antunes, Kim Feltre, and Mike Callahan's (collectively, the "Board Defendants") Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 31), and Defendants Township of Hillsborough (the "Hillsborough Township"), David Fisher, Thomas McClain, and Michael McMahon's (the "Police Defendants") (collectively, the "Hillsborough Township Defendants") Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 36). Plaintiff opposed the three Motions to Dismiss (ECF Nos. 37, 44, 47), and the HEA and Board Defendants replied (ECF Nos. 38, 45).[1] After careful consideration of the parties' submissions, the Court decides the matter without oral argument pursuant to Federal Rule

---

[1] The Hillsborough Township Defendants did not file a reply brief.

of Civil Procedure 78(b)[2] and Local Civil Rule 78.1(b). For the reasons set forth below, the Court grants the three Motions to Dismiss.

I.    **BACKGROUND**[3]

   A.    **Factual Background**

This matter arises from Plaintiff's allegation that anonymous e-mail messages he sent to members of the Hillsborough Township Board of Education (the "Board") and the Hillsborough Education Association (the "HEA")[4] expressing concern over a school policy led to a criminal charge of harassment against him in violation of his rights under the First Amendment to the United States Constitution. (*See generally* Am. Compl.)

In April 2021, Plaintiff learned that school officials were "quietly implement[ing]" a "detracking policy" in the Hillsborough Township School District's curriculum despite the Board never officially adopting such a policy. (*Id.* ¶¶ 64-68.) According to Plaintiff, "tracking" is an "education policy" that schools use to group students based on their academic abilities. (*Id.* ¶¶ 53-54.) Conversely, a "detracking" policy "commingl[es] students with mixed academic achievement in the same classes, with the intention of exposing all students to the same curriculum, materials, and teaching." (*Id.* ¶ 58.) Plaintiff describes tracking as a matter of public concern debated by educators and policymakers for decades. (*Id.* ¶¶ 60, 63.) Defendants Lisa Antunes ("Antunes")

---

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

[3] The Court adopts and incorporates the Background as set forth in its prior Opinion entered August 30, 2024 ("August 2024 Opinion"), with the revisions set forth based on Plaintiff's Amended Complaint. (*See* ECF No. 27.) For the purposes of considering the instant Motions to Dismiss, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[4] The HEA is the union that represents most personnel employed in the school district by the Board for the purpose of collective negotiations concerning the terms and conditions of employment. (Am. Compl. ¶ 36.)

(then-Superintendent of the District) and Kim Feltre ("Feltre") (then-Assistant Superintendent for Curriculum and Instruction) instituted the detracking policy and required staff members "to refer to detracking as a 'practice,' not as a policy . . . so that detracking could be implemented under the radar without requiring disclosure to, or approval from, the elected [Board members] or the public." (*Id.* ¶¶ 66-67.)

From April to June 2021, Plaintiff sent "numerous" e-mail messages to members of the Board and the HEA voicing his objections to their "clandestine implementation of a 'detracking' policy" in the Hillsborough Township School District. (*Id.* ¶¶ 13-17, 37-38, 69, 88-89.) Plaintiff intended to inform these officials of the "unauthorized, clandestine implementation of detracking in [Hillsborough Township] schools and further persuade them that detracking was not in the best interest of . . . students, the school district, and the town at large." (*Id.* ¶ 69.) Plaintiff sent his e-mail messages using a pseudonym "to protect [his] sources," and out of fear that "administrators would retaliate against his wholly-uninvolved spouse," who is a school district employee. (*Id.* ¶ 74.) Plaintiff alleges that his e-mail messages were "professional" and "respectful," and included "academic papers that presented a balanced examination of detracking." (*Id.* ¶¶ 79-81.) Plaintiff never received any responses to his e-mail messages. (*Id.* ¶ 91.)

On June 16, 2021, Plaintiff began sending e-mail messages to the Board's "general email address." (*Id.* ¶ 96.) On June 18, 2021, Defendant Aiman Mahmoud ("Mahmoud"), then-secretary of the Board and the school district's business administrator, responded to Plaintiff's e-mail message, copying the captain of the Hillsborough Township Police Department ("HTPD"), Defendant Dave Fisher ("Fisher"). (*Id.* ¶¶ 30, 98, 110.) Mahmoud accused Plaintiff "of engaging in criminal harassment," "threatened to uncover [Plaintiff's] real identity," "demanded that he cease and desist from sending further email communications," and "advised [Plaintiff] that the

3

[school district] . . . would file a criminal complaint against him." (*Id.* ¶¶ 100-101.) Plaintiff alleges that Mahmoud sent this e-mail message at the direction of the HEA and Board Defendants. (*Id.* ¶ 99.) Plaintiff responded via e-mail message that same day, explaining to Mahmoud that his e-mail messages "did not constitute criminal harassment" but promising "to cease his email communications anyway." (*Id.* ¶¶ 117, 119.) Mahmoud responded that the school administration still intended to uncover his identity and pursue criminal charges. (*Id.* ¶¶ 121-122.) After this exchange, "Plaintiff began suffering from severe anxiety," including "difficulty sleeping, panic attacks, lack of concentration, headaches, nausea, and feelings of dread." (*Id.* ¶ 124.)

On June 21, 2021, Fisher opened an investigation into Plaintiff "at the direction, encouragement, and/or insistence of" school officials and the HEA and Board Defendants. (*Id.* ¶¶ 128-129.) On June 24, 2021, Plaintiff sent another pseudonymous e-mail message to Mahmoud describing his anxiety and asking Defendants "to cease their efforts to unmask [Plaintiff] and prosecute him." (*Id.* ¶ 125.) Mahmoud did not respond but forwarded Plaintiff's e-mail message to Fisher. (*Id.* ¶¶ 126-127.)

On July 12, 2021, a lawyer for Plaintiff sent a letter to Mahmoud and Fisher explaining that Plaintiff's e-mail messages were protected by the First Amendment, and that Mahmoud's "threats to prosecute Plaintiff [were] inappropriate and clearly meant to interfere with and undermine Plaintiff's right of free speech." (*Id.* ¶ 136.) But the investigation proceeded. Defendant Thomas McLain ("McLain"), a member of the HTPD, interviewed Defendants Mike Callahan ("Callahan"), Jean Trujillo ("Trujillo") (then-president of the Board), Henry Goodhue ("Goodhue") (then-president of the HEA), Amy Salinger ("Salinger") (then a teacher and the HEA treasurer), and Gregory Gillette ("Gillette") in June and July 2021, and discovered Plaintiff's identity after issuing subpoenas related to Plaintiff's anonymous e-mail account. (*Id.* ¶¶ 130,

4

143-158.) McLain also conducted a "telephone interrogation" with Plaintiff and his counsel. (*Id.* ¶¶ 159-167.) On September 27, 2021, Plaintiff was charged with criminal harassment. (*Id.* ¶ 178.) On April 12, 2022, without hearing from any witnesses, the municipal court "determined that the State could not meet its burden of proof supporting the elements of harassment . . . and entered a verdict of 'not guilty.'" (*Id.* ¶ 197-199.)

### B. Procedural Background

On November 22, 2023, Plaintiff filed a complaint asserting First Amendment retaliation claims under 42 U.S.C. § 1983 against the individual Defendants in their individual capacities, First Amendment retaliation claims under § 1983 against the Board and the HTPD for a "policy, practice, and/or custom" that violated Plaintiff's First Amendment rights, and claims for violations of Plaintiff's rights to free expression and petition under the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1, et seq. (West 2004). (Compl. ¶¶ 154-177, ECF No. 1.)[5]

On August 30, 2024, the Court entered an Opinion and Order dismissing Plaintiff's Complaint for time bar issues and for failure to state a claim upon which relief may be granted, but gave Plaintiff leave to file an amended complaint. (Aug. 2024 Op., ECF No. 27; ECF No. 28.) Plaintiff subsequently filed the Amended Complaint, which restates his allegations, replaces the HTPD with Hillsborough Township,[6] and adds claims for conspiracy to violate his civil rights under 42 U.S.C. § 1983, civil conspiracy, and malicious prosecution. (ECF No. 29.) The HEA,

---

[5] Plaintiff also filed a Motion to Proceed Pseudonymously (ECF No. 14), which the Court denied (ECF No. 26).

[6] Prior to the Court's August 2024 Opinion and Order, Plaintiff filed a motion to substitute the HTPD with Hillsborough Township because the HTPD was not "the correct party in interest." (ECF No. 19-1 at 29.) In dismissing Plaintiff's Complaint, the Court denied Plaintiff's motion as moot, but explained that Plaintiff could substitute the HTPD with Hillsborough Township if and when Plaintiff filed an amended complaint. (Aug. 2024 Op. 18.)

Board, and Hillsborough Township Defendants each moved to dismiss the Amended Complaint under Rule 12(b)(6).[7] (HEA Moving Br., ECF No. 30-1; Board Moving Br. 5, ECF No. 31-1; Hillsborough Township Moving Br., ECF No. 36-2.)

## II.     LEGAL STANDARD

Rule 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S.

---

[7] The Board Defendants also request that the Court strike Plaintiff's Amended Complaint in its entirety for failure to comply with Local Civil Rule 10.1(a). (Board Moving Br. 6-7.) While the Court agrees that Plaintiff's Amended Complaint fails to comply with Local Civil Rule 10.1(a) in that it does not "state in the first paragraph the street and post office address of each named party to the case," the Court exercises its discretion and considers Plaintiff's Amended Complaint as filed. L. Civ. R. 10.1(a) (providing that the Clerk "may" strike a pleading for a deficiency on these grounds). The Court, however, directs Plaintiff to strictly comply with the Local Civil Rules in connection with future submissions to the Court.

at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

III. **DISCUSSION**

    A.    **Claims under § 1983 (Counts One and Three), the NJCRA (Counts Five and Six), and § 1985 (Count Eight)**

Counts One and Three involve First Amendment retaliation claims under § 1983 against the individual HEA, Board, and Police Defendants. (Am. Compl. ¶¶ 203-210, 229-236.) Counts Five and Six are based on the same conduct and assert parallel claims under the NJCRA.[8] (*Id.* ¶¶ 251-256.) Count Eight alleges that all Defendants engaged in a conspiracy to violate Plaintiff's civil rights under § 1985. (*Id.* ¶¶ 265-269.) The Board Defendants argue that Plaintiff's claims under § 1983, § 1985 and the NJCRA are time-barred by a two-year statute of limitations. (Board Moving Br. 7-13.)

As this Court explained in its prior Opinion, the defendant bears the burden of establishing that a statute of limitations affirmative defense applies, and claims may be dismissed as untimely on a Rule 12(b)(6) motion only if the time bar is apparent on the face of the complaint. *Evans v. Gloucester Township*, 124 F. Supp. 3d 340, 349 (D.N.J. 2015) (citations omitted). "The length of the statute of limitations for a § 1983 . . . claim is governed by the personal injury tort law of the state where the cause of action arose." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing

---

[8] "The NJCRA was modeled on Section 1983, and New Jersey courts have consistently looked at claims under the NJCRA through the lens of § 1983. The two are construed in parallel." *Southward v. Elizabeth Bd. of Educ.*, No. 15-3699, 2017 WL 111924, at *11 n.8 (D.N.J. Jan. 11, 2017) (citations and internal quotations omitted).

*Wallace v. Kato*, 549 U.S. 384, 387 (2007)). In New Jersey, "[t]here is a two-year statute of limitations for claims brought under § 1983." *Sears v. Dellavelle*, No. 21-18739, 2022 WL 951367, at *3 (D.N.J. Mar. 30, 2022) (citing *O'Connor v. City of Newark*, 440 F.3d 125, 126-27 (3d Cir. 2006)). "New Jersey's two-year statute of limitations for personal-injury claims also applies to claims under the NJCRA." *Lewis v. N.J. Dept. of Child. &Fams.*, No. 22-2782, 2023 WL 4700642, at *3 (3d Cir. Jul. 24, 2023) (citing *Lapolla v. County of Union*, 157 A.3d 458, 464 (N.J. Super. Ct. App. Div. 2017) and N.J. Stat. Ann. § 2A:14-2(a)). With respect to Plaintiff's new conspiracy claim under § 1985, the same two-year statute of limitations applies. *Bartley v. New Jersey*, No. 21-2748, 2022 WL 1599124, at *2 n.3 (3d Cir. May 20, 2022).

The accrual of § 1983 claims is governed by federal law and runs "when a 'reasonable person should have known' that they had suffered an injury." *Lewis*, 2023 WL 4700642, at *3 (quoting *Kach*, 589 F.3d at 634). "New Jersey follows a similar rule for the statute of limitations applicable to NJCRA claims." *Id.* (citing *Caravaggio v. D'Agostini*, 765 A.2d 182, 187 (N.J. 2001) (finding that the limitations period of N.J. Stat. Ann. § 2A:14-2 begins to run when, based on a reasonable person test, plaintiff "knew or should have known of sufficient facts to start the statute of limitations running")). Similarly, the accrual of § 1985 claims runs when the plaintiff "knew or should have known" of the alleged conspiracy. *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989); *Evans*, 124 F. Supp. 3d at 349 n.9. Here, because Plaintiff's First Amendment retaliation claims under § 1983, conspiracy claims under § 1983, and claims under the NJCRA follow the same statute of limitations analyses, the Court will consider the timeliness of Counts One, Three, Five, Six, and Eight together. *See, e.g., Southward*, 2017 WL 111924, at *11-12 (determining that both § 1983 and NJCRA claims for First Amendment retaliation were untimely under the same

8

analysis); *Evans*, 124 F. Supp. 3d at 349 (noting that "the Court's statute of limitations analysis is the same for Plaintiff's § 1983 and § 1985 claims").

Plaintiff did not file his original complaint until November 22, 2023. (*See* Compl.) Plaintiff's Complaint involved claims based on allegedly retaliatory conduct that occurred on or before September 27, 2021. (ECF No. 1 ¶¶ 102, 147.) As this Court explained in its prior Opinion:

> Plaintiff alleges few retaliatory acts on the part of the individual HEA and Board Defendants. Plaintiff ascribes no specific retaliatory conduct on the part of Antunes and Feltre other than allegedly "approv[ing]" of the threats of prosecution made against Plaintiff, which occurred before Plaintiff was charged with harassment. (*See* ECF No. 1 ¶¶ 84, 161.) As for the remaining HEA and Board Defendants, the only specific allegations of retaliatory conduct are Mahmoud's emails to Plaintiff between June 18 and June 24, 2021, and Callahan, Goodhue, Salinger, Trujillo, and Gillette's interviews with law enforcement that occurred in June and July of 2021. (*Id.* ¶¶ 83-101, 104, 115, 147.) Similarly, the Police Defendants' alleged retaliatory conduct occurred between June 21, 2021—when the investigation into Plaintiff was opened—and September 27, 2021, when McLain, "at the direction of Chief McMahaon [sic] and Captain Fisher," initiated a charge of criminal harassment against Plaintiff. (ECF No. 1 ¶¶ 102, 147.)
>
> All of the alleged retaliatory conduct occurred on or before September 27, 2021, which is more than two years before Plaintiff filed his Complaint on November 22, 2023. Plaintiff alleges no conduct on the part of these Defendants beyond September 27, 2021—only undated, conclusory allegations that they "conspired to deprive and have deprived Plaintiff" of his First Amendment rights "by retaliating against Plaintiff through threatening and prosecuting Plaintiff without probable cause." (*Id.* ¶¶ 156, 165.) But the statute of limitations for a First Amendment retaliation claim "begins to run when each alleged retaliatory act occurs," and Plaintiff therefore cannot allege an "overarching conspiracy" to "salvage otherwise untimely acts of discrimination or instances of alleged wrongdoing that Plaintiff knew or should have known were actionable. . . .
>
> At the time he was charged, Plaintiff was already aware that the charges were allegedly "meant to interfere with Plaintiff's right of free speech" as evidenced by his counsel's July 12, 2021 letter to Mahmoud. (*Id.* ¶¶ 108-113.) Therefore, based on the allegations in the Complaint, Plaintiff was aware of his alleged injury on

> September 27, 2021, when he was criminally charged for harassment in alleged retaliation for exercising his First Amendment rights.
>
> [T]o the extent that Plaintiff is asking the Court to construe Plaintiff's conduct as a "continuing violation" that lasted until the charges were dismissed on April 12, 2022, the "continuing violations" doctrine has repeatedly been rejected in the First Amendment retaliation context. . . . Accordingly, it is apparent from the face of the Complaint that Counts One, Three, Five, and Six are time-barred, and the Court will dismiss them without prejudice.

This Court dismissed Plaintiff's Complaint without prejudice to permit Plaintiff to bring an amended complaint with timely claims. (Aug. 2024 Op., ECF No. 27; ECF No. 28.)

Plaintiff's Amended Complaint, however, fails to remediate any of the defects identified in the Court's prior Opinion. Plaintiff's § 1983, § 1985, and NJCRA claims continue to be premised on conduct that occurred on or before September 27, 2021—including that Defendants "[i]nitiat[ed] a criminal investigation into the lawful conduct of Plaintiff," "[f]il[ed] a complaint against Plaintiff without probable cause," and "pursu[ed] prosecution of Plaintiff for the exercise of his substantive rights." (Am. Compl. ¶¶ 203-256.) While Plaintiff argues in opposition that certain retaliatory conduct alleged in the Amended Complaint occurred after September 27, 2021, and that each of these acts is "individually actionable," Plaintiff's § 1983, § 1985, and NJCRA claims are not premised on these isolated acts, but are rather premised on the allegedly retaliatory prosecution and conduct that occurred on or before September 27, 2021.[9] (*Id.*; Pl.'s Board Opp'n Br. 6, ECF No. 44.) "It is axiomatic . . . that a motion to dismiss is directed to the face of the

---

[9] To the extent that Plaintiff is asking the Court to construe Plaintiff's conduct as a "continuing violation" that lasted until the charges were dismissed on April 12, 2022, the Court again notes that the "continuing violations" doctrine has repeatedly been rejected in the First Amendment retaliation context. (*See* Aug. 2024 Op.); *see, e.g.*, *O'Connor*, 440 F.3d at 128-29; *Evans*, 124 F. Supp. 3d at 349-51 ("[V]irtually all of the precedent discussing the continuing violation doctrine involves workplace discrimination suits.").

10

[Amended] [C]omplaint, with irrelevant exceptions, and that a complaint cannot be amended by, e.g., statements in a brief." *Ponce v. Wilmington Sav. Fund Soc'y*, No. 22-4834, 2023 WL 4197179, at *7 (D.N.J. June 26, 2023); *see Pennsylvania ex. Rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (stating same).

Even considering only the alleged retaliatory conduct that occurred after September 2021, Plaintiff's claims would still be time-barred. Specifically, Plaintiff contends the following acts occurred after September 2021, and caused Plaintiff harm: (1) the Hillsborough Municipal Court held hearings between November 2021 and April 2022 during the state-court proceedings against Plaintiff; (2) Antunes and Feltre testified that they received "numerous" e-mail messages from Plaintiff during the state-court proceedings; (3) Trujillo, Salinger, and Gillette met with the municipal prosecutor to prepare for trial in "late 2021 and 2022"; (4) Trujillo, Salinger, and Gillette "changed their testimony" in February 2022; and (5) Trujillo, Salinger, and Gillette, through McLain, threatened to prosecute Plaintiff again for harassment if Plaintiff invited them to meet and discuss Plaintiff's e-mail messages and the legal proceedings.[10] (Pl.'s Board Opp'n Br. 5-6; *see* Am. Compl. ¶¶ 173-75; ¶¶ 185-201.)

All of the allegedly retaliatory conduct that occurred after September 2021 concerns actions taken during the legal proceedings against Plaintiff. (Am. Compl. ¶¶ 173-201.) Because the statute of limitations analysis for First Amendment retaliation claims assesses when the plaintiff "knew or should have known of the injury upon which [his] action is based," *Kach*, 5589 F.3d at 634, and Plaintiff alleges that he was deterred from exercising his First Amendment rights

---

[10] In addition to these five acts, Plaintiff argues that the alleged interrogation of his wife is "individually actionable" and timely. (Pl.'s Board Opp'n Br. 6.) This allegation, however, is undated in the Amended Complaint. (Am. Compl. ¶ 173; *see id.*) Because the Court cannot plausibly discern when this interrogation occurred from the allegations in the Amended Complaint, the Court does not consider it here in its statute of limitations analysis.

as a result of this conduct, (*see* Am. Compl. ¶¶ 173-201; Pl.'s Board Opp'n Br. 4-6), the Court must determine when Plaintiff knew or should have known he was being retaliated against for exercising his First Amendment rights.

Here, Plaintiff became aware of his alleged injury at least on September 27, 2021, when he was criminally charged for harassment in alleged retaliation for exercising his First Amendment rights—not when the criminal proceedings were ongoing. (Am. Compl.¶¶ 108-113.) Therefore, while Plaintiff's Amended Complaint adds allegations of conduct that occurred after September 2021, Plaintiff's claims remain time-barred because Plaintiff was aware of his alleged injury when he was criminally charged. (*See* Aug. 2024 Op. 13-14.) Plaintiff cannot now "salvage otherwise untimely acts of discrimination or instances of alleged wrongdoing that Plaintiff knew or should have known were actionable" by adding allegations of "ongoing acts." *Evans*, 124 F. Supp. 3d at 351. Indeed, this Court explained in its prior Opinion that alleging Defendants were "threatening and prosecuting Plaintiff without probable cause" even after September 2021 would not change the statute of limitations analysis, because "favorable termination of the underlying criminal proceedings is not required to prove First Amendment retaliation," and Plaintiff was "already aware" of his alleged injury when he was charged with harassment in September 2021. (Aug. 2024 Op. 13).

Likewise, Plaintiff's new conspiracy claim under § 1983 fares no better. The New Jersey two-year statute of limitations is applicable to § 1985 claims and runs when a plaintiff knew or should have known of the alleged conspiracy. *Dique v. New Jersey State Police*, 603 F.3d 181, 189 (3d Cir. 2010) (citing *Bougher*, 882 F.2d at 80). Here, Plaintiff was clearly aware of the purported conspiracy to deprive him of his First Amendment rights at the time he was charged, thus, his conspiracy claim arising from these actions is also time barred by the statute of limitations. *Kost*

v. *Kozakiewicz*, 1 F.3d 176, 191 (3d Cir. 1993) (addressing timeliness of conspiracy claim and stating that "[a]doption of the last overt act rule urged by [the plaintiff] would invite attempts to revive time-barred injuries by piggy-backing them onto actions occurring within the relevant period").

Accordingly, it is apparent on the face of the Amended Complaint that Counts One, Three, Five, Six, and Eight are time-barred, and the Court dismisses these claims without prejudice.[11]

### B.    *Monell* Claims (Counts Two and Four)

In Counts Two and Four, Plaintiff asserts *Monell* claims against the Board Defendants and Hillsborough Township. In order to state a cognizable *Monell* claim against a municipality, a plaintiff must allege his constitutional rights were violated by an agent of the municipality as the result of either a municipal policy or a well-established custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). *Monell* claims are "subject to the same two-year statute of limitations as the underlying § 1983 tort." *Waselik v. Township of Sparta*, No. 16-4969, 2017 WL 2213148, at *5 (D.N.J. May 18, 2017) (citing *Desposito v. New Jersey*, No. 14-1641, 2015 WL 2131073, at *10 (D.N.J. May 5, 2015)). The statute of limitations for a *Monell* claim begins to run when the plaintiff knew, or should have known, of enough facts to support a claim for the alleged violation. *Leonard v. City of Pittsburgh*, No. 13-455, 2013 WL 4541727, at *5 (W.D. Pa. Aug. 27, 2013), *aff'd*, 570 F. App'x 241 (3d Cir. 2014).

Here, in Count Two, Plaintiff accuses the Board of establishing "a policy, practice, and/or custom" of threatening and pursuing prosecution of citizens who "contact school officials to question the district's educational policies and practices." (Am. Compl. ¶¶ 211-228.) In Count Four, Plaintiff similarly accuses the HTPD of "enabling, supporting, and pursuing criminal

---

[11] To the extent that Plaintiff can definitively set forth claims which are not time barred, the Court will give Plaintiff one final opportunity to amend his complaint.

harassment complaints against community members that contact school officials to question the district's educational policies and practices." (*Id.* ¶¶ 237-250.) The only facts Plaintiff alleges in support of these purported policies or customs is that he was prosecuted for exercising his First Amendment rights. (*Id.* ¶¶ 211-250.) Thus, Plaintiff either knew, or should have known, of enough facts to support a *Monell* claim when he was charged with harassment on September 27, 2021. Accordingly, Plaintiff's claims pursuant to *Monell* are also time-barred. *See Waselik*, 2017 WL 2213148, at *5; *Desposito*, 2015 WL 2131073, at *10.

Apart from the statute of limitations bar, Plaintiff fails to state a claim under *Monell*. When a plaintiff brings a complaint under *Monell* against a municipality, the specific offending custom, policy, or practice must be adequately plead. *See McTernan v. City of York*, 564 F.3d 636, 638 (3d Cir. 2009) ("To satisfy the pleading standard, [a plaintiff] must identify a custom or policy and specify what exactly that custom or policy was.") (citing *Phillips*, 515 F.3d at 224). Because Plaintiff does not point to an official regulation as a policy or practice, he must rely on the rule that "[a] custom 'can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). In addition, a plaintiff must allege that the policy or custom was the "proximate cause" of his injuries, *see Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citation omitted), "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges." *See id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)). At the pleading stage, this generally requires some facts that tend to show that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to the injuries in question. *See id.*

Here, Plaintiff's allegations fall short of identifying a specific proclamation, policy, or edict that rises to the level of a custom that "is so well-settled and permanent as virtually to constitute law." *Bielvicz*, 915 F.2d at 850. The only facts in support of a policy or custom alleged by Plaintiff concern actions taken against Plaintiff himself. But "[a]ctions taken against Plaintiff alone are insufficient to establish custom that can give rise to municipal liability." *May v. Borough of Pine Hill*, No. 10–2628, 2014 WL 2931020, at *5 (D.N.J. June 30, 2014). Thus, independent of the statute of limitations bar, Plaintiff fails to sufficiently plead a *Monell* claim. Accordingly, Counts Two and Four of Plaintiff's Amended Complaint are dismissed without prejudice.[12]

### C.    State-Law Claims (Counts Seven and Nine)

In Counts Seven and Nine, Plaintiff brings malicious prosecution and civil conspiracy claims under New Jersey state law. Because the Court dismisses the federal claims and there is no other apparent basis for subject matter jurisdiction, the Court must decide whether to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). Generally, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Id.* Here, none of the aforementioned considerations warrant exercising jurisdiction over the remaining claims. Thus, the Court dismisses the Amended Complaint in its entirety. *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 567 (3d Cir. 2017) (explaining that a federal court may decline to exercise supplemental

---

[12] In addition, because Plaintiff's claims have been dismissed as time-barred or for not meeting the pleading standards of Rule 12(b)(6), the Court need not address Defendants' qualified immunity arguments at this stage. *See, e.g., Lopez v. Eaton*, No. 21-13076, 2017 WL 6539236, at *3 (D.N.J. Dec. 21, 2017) (declining to determine qualified immunity after dismissing § 1983 claim); *Manion v. Sarcione*, 192 F. Supp. 2d 353, 357 (E.D. Pa. 2001) (same).

jurisdiction over state law claims "when it dismisses all claims over which it has original jurisdiction.").

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are granted, and Plaintiff's claims are dismissed without prejudice. To the extent that Plaintiff can definitively set forth claims which are not time barred, and can cure the deficiencies outlined herein, the Court will give Plaintiff one final opportunity to file an amended complaint. The Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE